1    Andrew Leibnitz (State Bar No. 184723)
     aleibnitz@fbm.com
2    FARELLA BRAUN + MARTEL LLP
     235 Montgomery Street, 17th Floor
3    San Francisco, CA  94104
     Telephone:  (415) 954-4400
4    Facsimile:  (415) 954-4480

5    David W. Harlan (*pro hac vice*)
     B. Scott Eidson (*pro hac vice*)
6    Richard L. Brophy (*pro hac vice*)
     dharlan@armstrongteasdale.com
7    seidson@armstrongteasdale.com
     rbrophy@armstrongteasdale.com
8    ARMSTRONG TEASDALE LLP
     7700 Forsyth Blvd. Suite 1800
9    St. Louis, MO 63105
     Telephone:  (314) 621-5070
10   Facsimile:  (314) 621-5065

11   Attorneys for Plaintiff
     CAVE CONSULTING GROUP, INC.

12                    UNITED STATES DISTRICT COURT

13

14                    NORTHERN DISTRICT OF CALIFORNIA

15

16                         SAN JOSE DIVISION

17   CAVE CONSULTING GROUP, INC.,

18              Plaintiff,                  Case No.  5:11-cv-0469-EJD

19        vs.                               **SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DECLARATORY JUDGMENT OF NON-INFRINGEMENT, INVALIDITY AND UNENFORCEABILITY**

20   INGENIX, INC.,

21              Defendant.

22

23

24        Plaintiff Cave Consulting Group, Inc. ("CCGroup"), for its Second Amended Complaint

25   against defendant Ingenix, Inc. ("Ingenix"), alleges as follows:

26                              **Parties**

27        1.    Plaintiff CCGroup is a California corporation with a principal place of business in

28

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD

1    San Mateo, California.  Plaintiff CCGroup is the owner by assignment of all right, title, and

2    interest in United States Patent No. 7,739,126.

3        2.      Defendant Ingenix is a Delaware corporation with a principle place of business in

4    Minnetonka, Minnesota.  Ingenix is registered to do business and is doing business in the State of

5    California.

6                        **Jurisdiction and Venue**

7        3.      The claims alleged below are brought under the Patent Laws of the United States,

8    35 U.S.C. § 271 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

9        4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

10   §§ 1331 and 1338(a).

11       5.      Defendant is subject to personal jurisdiction in this district because it is a Delaware

12   corporation registered to do business in California and has an office in San Francisco, California.

13   Moreover, Ingenix's wrongful activities occurred and continue to occur in this district.  Plaintiff

14   CCGroup is informed and believes, and on that basis alleges, that at least the accused products

15   described below have been advertised, marketed, promoted, offered for sale, and/or sold by

16   Ingenix in this district.

17       6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c)

18   and § 1400(b), in that a substantial part of the actions, statements, and threats giving rise to the

19   claims took place here and the defendant is subject to personal jurisdiction here.

20                        **Patents-In-Suit**

21       7.      On June 15, 2010, the United States Patent and Trademark Office duly and legally

22   issued the '126 patent, entitled "Method, System, and Computer Program Products for Physician

23   Efficiency Measurement and Patient Health Risk Stratification."  The '126 patent was duly and

24   properly assigned to CCGroup and remains in full force and effect.  A copy of the '126 patent is

25   attached hereto as Exhibit A.

26       8.      Ingenix owns all right, title and interest in U.S. Patent No. 7,222,079, entitled

27   "Method and System for Generating Statistically-Based Medical Provider Utilization Profiles,"

28   which was issued on May 22, 2007.  A copy of the '079 Patent is attached as Exhibit B.

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                              - 2 -

9.      Ingenix owns all right, title and interest in U.S. Patent No. 7,774,252, entitled "Method and System for Generating Statistically-Based Medical Provider Utilization Profiles," which was issued on August 10, 2010.  A copy of the '252 Patent is attached as Exhibit C.

10.      Ingenix owns all right, title and interest in U.S. Patent No. 5,835,897, entitled "Computer-Implemented Method for Profiling Medical Claims," which was issued on November 10, 1998.  A copy of the '897 Patent is attached as Exhibit D.

11.      Ingenix owns all right, title and interest in U.S. Patent No. 6,370,511, entitled "Computer-Implemented Method for Profiling Medical Claims," which was issued on April 9, 2002.  A copy of the '511 Patent is attached as Exhibit E.

12.      Ingenix owns all right, title and interest in U.S. Patent No. 7,620,560, entitled "Computer-Implemented Method for Profiling Medical Claims," which was issued on November 17, 2009.  A copy of the '560 Patent is attached as Exhibit F.

13.      Ingenix owns all right, title and interest in U.S. Patent No. 7,774,216, entitled "Computer-Implemented Method for Profiling Medical Claims," which was issued on August 10, 2010.  A copy of the '216 Patent is attached as Exhibit G.

14.      Ingenix owns all right, title and interest in U.S. Patent No. 7,725,333, entitled "Cluster of Correlated Medical Claims In an Episode Treatment Group," which was issued on May 25, 2010.  A copy of the '333 Patent is attached as Exhibit H.

15.      Ingenix owns all right, title and interest in U.S. Patent No. 7,979,290, entitled "Computer-Implemented Method For Grouping Medical Claims into Episode Treatment Groups," which was issued on July 12, 2011.  A copy of the '290 Patent is attached as Exhibit I.

**Ingenix's Infringement of U.S. Patent No. 7,739,126**

16.      CCGroup repeats and incorporates by reference the allegations contained in Paragraphs 1-15 above as if fully set forth herein.

17.      CCGroup's business includes developing and marketing sophisticated methods and systems used to evaluate patterns of healthcare delivery and measure the efficiency of healthcare providers.  CCGroup has developed such a product, known as the CCGroup Marketbasket System™, which includes systems and methods encompassed by claims of the '126

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                    - 3 -

1    patent.

2         18.    CCGroup has licensed its CCGroup Marketbasket System™ to numerous entities

3    in the United States.

4         19.    Ingenix's business includes licensing methods and systems used to evaluate

5    patterns of healthcare delivery and measure the efficiency of healthcare providers.

6         20.    Upon information and belief, Ingenix, in direct competition with CCGroup, has

7    licensed provider efficiency measurement products that are encompassed by one or more claims

8    of the '126 patent.

9                  **Ingenix's Patent Enforcement Activities Against CCGroup**

10        21.    CCGroup repeats and incorporates by reference the allegations contained in

11   Paragraphs 1-20 above as if fully set forth herein.

12        22.    On January 11, 2011, Ingenix filed suit against CCGroup in the United States

13   District Court for the District of Minnesota.  In that lawsuit, Ingenix alleged that CCGroup

14   infringes the '079, '252, '897, '511, '560, '216, and '333 patents identified above.  A docket

15   report from that case, listing Ingenix's Complaint, is attached hereto as Exhibit J.

16        23.    In its Complaint, Ingenix asserted that:

17             "CCG makes, uses, offers and sells analytical tools used to
18             evaluate health care delivery efficiency, including but not limited
               to the CCG Marketbasket System.  The CCG Marketbasket System
19             is a software product.   The core component of the CCG
               Marketbasket System is the CCG "Grouper," which groups
20             medical claim data for further analysis.   CCG infringes one or
               more claims each of the '079, '252, '897, '522, '560, '216, and
21             '333 Patents by making, using, offering or selling at least the
               Marketbasket System.
22

23        24.    Ingenix never served its Complaint.  Instead, on June 20, 2011, after months of

24   discussion between the parties, Ingenix voluntarily dismissed its lawsuit without prejudice.  That

25   voluntary dismissal is also listed on the docket report attached hereto as Exhibit J.

26        25.    Despite this voluntary dismissal, Ingenix refuses, as requested, to provide

27   CCGroup with assurances that it will not allege infringement of those same patents against

28

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                    - 4 -

CCGroup in the future.

## COUNT I
## Infringement of U.S. Patent No. 7,739,126

26.     CCGroup repeats and incorporates by reference the allegations contained in Paragraphs 1-25 above as if fully set forth herein.

27.     Ingenix has infringed, contributed to the infringement, and/or induced the infringement of one or more claims of the '126 patent by making, using, selling, or offering to sell at least its provider efficiency measurement products.  Specifically, Ingenix's provider efficiency measurement products meet all of the limitations of at least Claims 1 and 22 of the '126 patent.

28.     Upon information and belief, Ingenix infringing acts will continue unless enjoined by the Court.

29.     As a direct and proximate result of Ingenix's conduct, CCGroup has suffered damages in an amount to be proven at trial.

30.     CCGroup is without an adequate remedy at law and will be irreparably injured if the Court does not enter an order preliminarily and/or permanently enjoining Ingenix from committing the acts of infringement complained of herein.

## COUNT II
## Declaratory Judgment of Non-Infringement and/or Invalidity of U.S. Patent No. 7,222,079

31.     CCGroup repeats and incorporates by reference the allegations contained in Paragraphs 1-30 above as if fully set forth herein.

32.     CCGroup continues to sell and license the software and methods of the CCGroup Marketbasket System™.

33.     Based on Ingenix's allegations of infringement of the '079 Patent and its refusal to provide assurances to CCGroup that it will not initiate another infringement lawsuit in the future, CCGroup has a reasonable apprehension that Ingenix will file suit against it to enforce the '079 Patent.

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                    - 5 -

34.     Although CCGroup's investigation of the '079 Patent is ongoing, on information and belief, CCGroup asserts that the claims of the '079 Patent are invalid for failure to satisfy the conditions and requirements for patentability as set forth in 35 U.S.C. §§ 101, 102, 103, 112, and 120.

35.     For the reasons set forth herein, a valid and justifiable controversy exists between CCGroup and Ingenix within the meaning of 28 U.S.C. § 2201 regarding infringement and invalidity of the '079 Patent.

36.     CCGroup seeks a declaration from this Court that it has not infringed and is not now infringing the '079 Patent.

37.     CCGroup also seeks a declaration from this Court that the claims of the '079 Patent are invalid.

## COUNT III
### Declaratory Judgment of Non-Infringement and/or Invalidity of U.S. Patent No. 7,774,252

38.     CCGroup repeats and incorporates by reference the allegations contained in Paragraphs 1-37 above as if fully set forth herein.

39.     Based on Ingenix's allegations of infringement of the '252 Patent and its refusal to provide assurances to CCGroup that it will not initiate another infringement lawsuit in the future, CCGroup has a reasonable apprehension that Ingenix will file suit against it to enforce the '252 Patent.

40.     Although CCGroup's investigation of the '252 Patent is ongoing, on information and belief, CCGroup asserts that the claims of the '252 Patent are invalid for failure to satisfy the conditions and requirements for patentability as set forth in 35 U.S.C. §§ 101, 102, 103, 112, and 120.

41.     For the reasons set forth herein, a valid and justifiable controversy exists between CCGroup and Ingenix within the meaning of 28 U.S.C. § 2201 regarding infringement and invalidity of the '252 Patent.

42.     CCGroup seeks a declaration from this Court that it has not infringed and is not

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                              - 6 -

1   now infringing the '252 Patent.

2        43.    CCGroup also seeks a declaration from this Court that the claims of the '252

3   Patent are invalid.

4

5                              **COUNT IV**
    **Declaratory Judgment of Non-Infringement and/or Invalidity of U.S. Patent No. 5,835,897**

6        44.    CCGroup repeats and incorporates by reference the allegations contained in

7   Paragraphs 1-43 above as if fully set forth herein.

8        45.    Based on Ingenix's allegations of infringement of the '897 Patent and its refusal to

9   provide assurances to CCGroup that it will not initiate another infringement lawsuit in the future,

10  CCGroup has a reasonable apprehension that Ingenix will file suit against it to enforce the '897

11  Patent.

12       46.    Although CCGroup's investigation of the '897 Patent is ongoing, on information

13  and belief, CCGroup asserts that the claims of the '897 Patent are invalid for failure to satisfy the

14  conditions and requirements for patentability as set forth in 35 U.S.C. §§ 101, 102, 103, 112, and

15  120.

16       47.    For the reasons set forth herein, a valid and justifiable controversy exists between

17  CCGroup and Ingenix within the meaning of 28 U.S.C. § 2201 regarding infringement and

18  invalidity of the '897 Patent.

19       48.    CCGroup seeks a declaration from this Court that it has not infringed and is not

20  now infringing the '897 Patent.

21       49.    CCGroup also seeks a declaration from this Court that the claims of the '897

22  Patent are invalid.

23

24                              **COUNT V**
    **Declaratory Judgment of Non-Infringement and/or Invalidity of U.S. Patent No. 6,370,511**

25       50.    CCGroup repeats and incorporates by reference the allegations contained in

26  Paragraphs 1-49 above as if fully set forth herein.

27       51.    Based on Ingenix's allegations of infringement of the '511 Patent and its refusal to

28

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint          - 7 -
Case No. 5:11cv0469-EJD

provide assurances to CCGroup that it will not initiate another infringement lawsuit in the future,

CCGroup has a reasonable apprehension that Ingenix will file suit against it to enforce the '511

Patent.

52.     Although CCGroup's investigation of the '511 Patent is ongoing, on information

and belief, CCGroup asserts that the claims of the '511 Patent are invalid for failure to satisfy the

conditions and requirements for patentability as set forth in 35 U.S.C. §§ 101, 102, 103, 112, and

120.

53.     For the reasons set forth herein, a valid and justifiable controversy exists between

CCGroup and Ingenix within the meaning of 28 U.S.C. § 2201 regarding infringement and

invalidity of the '511 Patent.

54.     CCGroup seeks a declaration from this Court that it has not infringed and is not

now infringing the '511 Patent.

55.     CCGroup also seeks a declaration from this Court that the claims of the '511

Patent are invalid.

## COUNT VI
**Declaratory Judgment of Non-Infringement and/or Invalidity of U.S. Patent No. 7,620,560**

56.     CCGroup repeats and incorporates by reference the allegations contained in

Paragraphs 1-55 above as if fully set forth herein.

57.     Based on Ingenix's allegations of infringement of the '560 Patent and its refusal to

provide assurances to CCGroup that it will not initiate another infringement lawsuit in the future,

CCGroup has a reasonable apprehension that Ingenix will file suit against it to enforce the '560

Patent.

58.     Although CCGroup's investigation of the '560 Patent is ongoing, on information

and belief, CCGroup asserts that the claims of the '560 Patent are invalid for failure to satisfy the

conditions and requirements for patentability as set forth in 35 U.S.C. §§ 101, 102, 103, 112, and

120.

59.     For the reasons set forth herein, a valid and justifiable controversy exists between

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                                    - 8 -

CCGroup and Ingenix within the meaning of 28 U.S.C. § 2201 regarding infringement and invalidity of the '560 Patent.

60.     CCGroup seeks a declaration from this Court that it has not infringed and is not now infringing the '560 Patent.

61.     CCGroup also seeks a declaration from this Court that the claims of the '560 Patent are invalid.

**COUNT VII**
**Declaratory Judgment of Non-Infringement and/or Invalidity of U.S. Patent No. 7,774,216**

62.     CCGroup repeats and incorporates by reference the allegations contained in Paragraphs 1-61 above as if fully set forth herein.

63.     Based on Ingenix's allegations of infringement of the '216 Patent and its refusal to provide assurances to CCGroup that it will not initiate another infringement lawsuit in the future, CCGroup has a reasonable apprehension that Ingenix will file suit against it to enforce the '216 Patent.

64.     Although CCGroup's investigation of the '216 Patent is ongoing, on information and belief, CCGroup asserts that the claims of the '216 Patent are invalid for failure to satisfy the conditions and requirements for patentability as set forth in 35 U.S.C. §§ 101, 102, 103, 112, and 120.

65.     For the reasons set forth herein, a valid and justifiable controversy exists between CCGroup and Ingenix within the meaning of 28 U.S.C. § 2201 regarding infringement and invalidity of the '216 Patent.

66.     CCGroup seeks a declaration from this Court that it has not infringed and is not now infringing the '216 Patent.

67.     CCGroup also seeks a declaration from this Court that the claims of the '216 Patent are invalid.

**COUNT VIII**
**Declaratory Judgment of Non-Infringement and/or Invalidity of U.S. Patent No. 7,725,333**

68.     CCGroup repeats and incorporates by reference the allegations contained in

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD          - 9 -

Paragraphs 1-67 above as if fully set forth herein.

69.     Based on Ingenix's allegations of infringement of the '333 Patent and its refusal to provide assurances to CCGroup that it will not initiate another infringement lawsuit in the future, CCGroup has a reasonable apprehension that Ingenix will file suit against it to enforce the '333 Patent.

70.     Although CCGroup's investigation of the '333 Patent is ongoing, on information and belief, CCGroup asserts that the claims of the '333 Patent are invalid for failure to satisfy the conditions and requirements for patentability as set forth in 35 U.S.C. §§ 101, 102, 103, 112, and 120.

71.     For the reasons set forth herein, a valid and justifiable controversy exists between CCGroup and Ingenix within the meaning of 28 U.S.C. § 2201 regarding infringement and invalidity of the '333 Patent.

72.     CCGroup seeks a declaration from this Court that it has not infringed and is not now infringing the '333 Patent.

73.     CCGroup also seeks a declaration from this Court that the claims of the '333 Patent are invalid.

**COUNT IX**
**Declaratory Judgment of Non-Infringement and/or Invalidity of U.S. Patent No. 7,779,290**

74.     CCGroup repeats and incorporates by reference the allegations contained in Paragraphs 1-73 above as is fully set forth herein.

75.     Based on Ingenix's allegations of infringement and its refusal to provide assurance to CCGroup that it will not initiate another infringement lawsuit in the future, CCGroup has a reasonable apprehension that Ingenix will file suit against it to enforce the '290 patent.

76.     Although CCGroup's investigation of the '290 Patent is ongoing, on information and belief, CCGroup asserts that the claims of the '290 Patent are invalid for failure to satisfy the conditions and requirements for patentability as set forth in 35 U.S.C. §§ 101, 102, 103, 112, and 120.

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD

- 10 -

77.     For the reasons set forth herein, a valid and justifiable controversy exists between CCGroup and Ingenix within the meaning of 28 U.S.C. § 2201 regarding infringement and validity of the '290 patent.

78.     CCGroup seeks a declaration from this Court that it has not infringed and is not now infringing the '290 Patent.

79.     CCGroup also seeks a declaration from this Court that the claims of the '290 Patent are invalid.

**COUNT X**
**Declaratory Judgment of Inequitable Conduct and**
**Unenforceability of the '897, '511, '560, '216, '333, and '290 Patents**

80.     CCGroup repeats and incorporates by reference the allegations contained in Paragraphs 1-79 above as if fully set forth herein.

Summary of Inequitable Conduct of Symmetry, Ingenix's Predecessor in Title

81.     Symmetry, Ingenix's predecessor in title to the '897 Patent, was involved in two Patent Office proceedings and two litigations involving the '897 Patent.  Symmetry and Dennis Dang, the '897 inventor, took inconsistent positions under oath before these tribunals regarding the date of invention of the "ETG" software that embodies the '897 Patent, the nature of Symmetry's commercial activities before the critical date for the '897 Patent and the significance of certain prior art cited against the '897 Patent.

82.     Depending on the exigencies of the proceeding, such as achieving priority over an invalidating reference or avoiding an on sale bar, Symmetry and Dang asserted under oath a priority date of either September 1993 or August 1994.  Symmetry and Dang also selectively misrepresented and withheld information from the Patent Office in an effort to conceal Symmetry's commercial activities and the relevance of certain prior art cited during prosecution of the '897 Patent.

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                      - 11 -

a.   Dang conceived of and had the ETG software ready for patenting in September 1993.  He, his closely-held corporate assignee, Symmetry, and its employees rushed the ETG software to market, culminating in an offer to license the ETG software to Aetna on June 12, 1994.  More than a year later, on June 22, 1995, Dang submitted an application to the Patent Office to obtain a patent on the invention embodied in his ETG software.  To avoid the inevitable repercussions of his early commercialization efforts, Dang did not disclose to the Patent Office his pre-critical date offer to sell the ETG software to Aetna.  The Patent office issued the '897 Patent as a result.

b.   After the '897 Patent issued, Symmetry filed suit against a competitor for infringing its newly-acquired patent.  To avoid invalidation based on prior art cited during that litigation, Symmetry swore to a conception date of September 1993.  Dang confirmed this conception date in deposition and also admitted that patent references which predated his patent application, but which were publicly available only after his September 1993 conception, disclosed the invention claimed in his '897 patent.

c.   Subsequently, in March of 2000, for reasons apparently related to the litigation, Symmetry requested that the Patent Office reexamine the '897 Patent.  During the reexamination, Symmetry finally disclosed its sales offer to Aetna but argued that the "on sale" bar did not apply because Dang had not conceived of his invention until August of 1994—several months *after* Symmetry offered to sell its ETG software to Aetna.  These sworn statements to the Patent Office contradicted Symmetry and Dang's earlier sworn statements in litigation that Dang first conceived of his invention in September of 1993.  The sworn statements also misrepresented the nature and substance of the invention that Symmetry offered for early sale to Aetna—an offer which, in truth, described Dang's complete invention in detail.

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                                    - 12 -

d.   Shifting Dang's conception date to August of 1994 exposed the '897 Patent to additional prior art cited during the previous litigation.  To ensure the validity of the patent, Symmetry and Dang concealed from the Patent Office Dang's admissions that those references disclosed the invention claimed in Dang's '897 Patent.  Relying on Symmetry and Dang's new conception date and new arguments that contradicted Dang's earlier sworn testimony, the Patent Office issued a certificate of reexamination for the '897 patent.

e.   Then in 2001, Ingenix sued Symmetry for patent infringement.  In that litigation, Symmetry reverted to its original conception date of 1993 to support an allegation that Ingenix derived its own patented technology from Dang's invention.  Symmetry's renewed claim to a 1993 conception date relied on a third sworn statement from Dang and on source code written in 1993 that was concealed from the Patent Office and that contradicted Dang and Symmetry's earlier representations to the Patent Office during reexamination that Dang did not conceive of his invention until August of 1994.

<u>The Development and Pre-Filing Sale of Software Embodying the '897 Patent</u>

83.     The '897, '511, '560, '216, '333, and '290 patents are members of a single patent family.  Each of these patents claims priority to an original patent application filed by Dennis Dang ("Dang") on June 22, 1995.

84.     In 1993, approximately two years before filing the application for the '897 Patent, Dang and his associate, Mitchell Portnoy, formed Symmetry Health Data Systems Incorporated ("Symmetry") with the goal of commercializing Dang's ideas for grouping raw medical claims data into episodes of care.

85.     In November 1993, Symmetry hired Dan Gardiner, a computer programmer.  Dang disclosed the details of his grouping methodology to Gardiner who proceeded to write

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD

- 13 -

software that practiced Dang's grouping methodology.

86.     By early 1994, Symmetry was advertising its grouping software for sale under the trade name "Episode Treatment Groups" or "ETGs."  These advertisements provided detailed information about the operation of the ETG software.

87.     At this time, Symmetry was also demonstrating the capabilities of its software to potential customers by processing their raw medical claims data into episodes of care.  In 1993 and early 1994, Symmetry performed such demonstrations for Aetna's Health Insurance Consulting Group ("Aetna") using raw claims data provided by Aetna.

88.     As a result of Symmetry's efforts, on May 13, 1994 Aetna formally requested a proposal from Symmetry to license the ETG software.

89.     On June 12, 1994, Symmetry responded to Aetna's RFP by offering to license the ETG software to Aetna.

90.     Along with its licensing offer, Symmetry gave Aetna  a sixty-page document that disclosed the operation of Symmetry's ETG software, a number of sample reports based on previously-processed raw claims data , and full pricing information for the ETG license.

91.     Symmetry's offer to license the ETG software was subject to acceptance on June 12, 1994 by Aetna and constituted an "offer to sell" the ETG software under 35 U.S.C. § 102(b).

                              Prosecution of the '897 Patent

92.     More than one year later, on June 22, 1995, Dang filed a patent application with the Patent Office that described his grouping methodology.

93.     The methodology described and claimed in Dang's patent application was the same methodology communicated to Gardiner in 1993, employed in Symmetry's ETG grouper advertised publicly to customers, and offered for sale to Aetna more than one year earlier.

94.     Despite their personal involvement in the commercialization of the ETG software,

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                              - 14 -

Dang, Portnoy and Gardiner did not disclose Symmetry's advertising materials, detailed communications with potential customers, or sales offer to Aetna to the Patent Office during prosecution of Dang's patent application.

95.     Dang, Portnoy and Gardiner failed to disclose these commercialization activities—which were material prior art to the patentability of the '897 Patent—despite their obligation to do so pursuant to the Patent Office's duty of disclosure, candor, and good faith and despite inquiries from their prosecution counsel regarding the existence of any statutory barring sales commercial activity.

96.     On November 10, 1998, without notice of Symmetry's June 12, 1994 offer for sale to Aetna, the Patent Office issued the '897 Patent with claims that read on Dang's grouping methodology and, by extension, Symmetry's already-developed ETG grouping software.

<u>Symmetry Sues MedStat and Asserts a September 1993 Conception Date</u>

97.     On June 23, 1995, one day after the Patent Office issued the '897 Patent, Symmetry filed suit against The MedStat Group, Inc., for infringing the newly-issued '897 patent. *See Symmetry Health Data Systems, Inc. v. MedStat Group Inc.*, Case No. 2:98-CV-02032-EHC ("MedStat Litigation").

98.     During discovery in the MedStat Litigation, Symmetry answered interrogatories from MedStat by admitting under oath that Dang conceived of the invention claimed in the '897 patent "at least as early as September of 1993."

99.     Symmetry also admitted in its answers that Dang's conception in September of 1993 was sufficient at that time to enable one skilled in the art to reduce Dang's invention to practice.

100.     These answers were consistent with the timing of Dang's formation of Symmetry in 1993 and the company's subsequent efforts to commercialize its ETG software in 1993 and early 1994.

101.     By answering under oath that Dang conceived his invention in September 1993,

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                                                   - 15 -

Symmetry avoided prior art presented in the MedStat Litigation that would have otherwise invalidated the '897 Patent.

102.    One of the references that Symmetry avoided by asserting a September 1993 conception date was U.S. Patent No. 5,557,514—a patent issued from an application filed with the Patent Office on June 23, 1994 by Jerry Seare ("Seare Patent").

103.    During the MedStat Litigation, Dang admitted in his deposition that the Seare Patent disclosed the same grouping methodology later claimed in his '897 patent.

104.    Based on the foregoing, had Symmetry or Dang admitted to a conception date after September of 1993 during the MedStat litigation, the Seare reference would have been invalidating prior art.

### In Reexamination, Dang Shifts Conception to August *1994*

105.    On March 27, 2000, several months before the parties settled the MedStat Litigation, Symmetry initiated a reexamination of its '897 Patent.

106.    Symmetry's lawyer, David Rosenbaum, requested reexamination to provide the Patent Office with prior art references that Dang knew about but never properly disclosed during the original prosecution of the '897 Patent.

107.    During the reexamination, Rosenbaum also disclosed Symmetry's June 12, 1994 sales offer to Aetna to the Patent Office for the first time.

108.    Realizing that this sales offer occurred more than a year before the filing of the '897 Patent, and thus would invalidate the patent, Dang, Portnoy, Gardiner, each a Symmetry employee, and Rosenbaum intentionally deceived the Patent Office concerning the conception date of the '897 Patent.

109.    Instead of providing the Patent Office with Symmetry's interrogatory responses and Dang's deposition testimony from the MedStat Litigation—evidence which clearly identified Dang's conception date as September of 1993 and conclusively established the Aetna offer as an invalidating § 102(b) offer for sale—Dang, Portnoy, Gardiner, and Rosenbaum submitted sworn declarations to the Patent Office that misrepresented Dang's conception as taking place almost a year later, in August of 1994.

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                    - 16 -

110.    Using the new August 1994 conception date, Symmetry then argued that its June 12, 1994 offer to Aetna was not an "offer for sale" under 35 U.S.C. § 102(b).

111.    Further, Dang, Portnoy, Gardiner and Rosenbaum each claimed that the software offered to Aetna on June 12, 1994, did not embody Dang's invention because it did not incorporate two key elements of the invention that, according to the new declarations, were not conceived until August of 1994—namely, the use of "dynamic time windows" and "episode shifting."

112.    These declarations directly contradicted Symmetry's earlier interrogatory responses from the MedStat Litigation and Dang's deposition testimony which both stated that the claims of the '897 Patent—including those having affirmative limitations directed to dynamic time windows and shifting—were fully conceived by September of 1993.

113.    The declarations submitted by Dang, Portnoy, Gardiner, and Rosenbaum during reexamination also directly contradicted declarations previously executed by at least one of Symmetry's customers (Dr. Lawrence G. Miller, Chief Medical Officer for HPR) stating that Symmetry was actively advertising and demonstrating its dynamic time window functionality before August of 1994.  Symmetry used this declaration to support its September 1993 conception date during the MedStat Litigation but intentionally withheld it from the Patent Office during reexamination.

114.    The declarations submitted to the Patent Office during reexamination also intentionally misrepresented the nature of the product Symmetry offered to sell to Aetna on June 12, 1994.  Contrary to the representations made to the Patent Office, the documentation accompanying Symmetry's June 12, 1994 sales offer set forth, in detail, how dynamic time windows and episode shifting were implemented in Symmetry's ETG software.

115.    Dang, Portnoy, Gardiner and Rosenbaum never provided the Patent Office with the interrogatory responses, customer declarations, deposition testimony or other evidence from the MedStat Litigation that contradicted their claim that Dang's conception occurred in August of 1994 and that Symmetry's sales offer was not invalidating prior art.

116.    Had Dang, Portnoy, Gardiner, and Rosenbaum provided the Patent Office with the

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD

- 17 -

evidence from the MedStat litigation that established Dang's conception in September of 1993, the Patent Office would not have deemed any of the claims of the '897 Patent patentable.

117.    In addition to misrepresenting Dang's date of conception and the nature of Symmetry's sales offer to Aetna, Symmetry intentionally failed to disclose to the Patent Office material information regarding the Seare Patent previously at issue in the MedStat Litigation.

118.    When Dang, Portnoy, Gardiner and Rosenbaum changed Dang's conception date to August of 1994 from September of 1993, the '897 Patent's priority date also moved from September 1993 to August 1994.

119.    Without the earlier September 1993 conception date, the Seare patent would be invalidating prior art to the '897 patent.

120.    Although Rosenbaum disclosed the Seare Patent to the Patent Office during reexamination, he did not disclose to the Patent Office Dang's deposition testimony in the MedStat litigation where Dang admitted that the Seare Patent taught the very same invention claimed in his '897 Patent.

121.    Instead of providing the Patent Office with this material information, Rosenbaum submitted arguments to the Patent Office that attempted to distinguish the claims of the '897 Patent from the methodology disclosed in the Seare Patent and other prior art—arguments that directly contradicted Dang's earlier sworn testimony  that the Seare patent anticipated the invention disclosed in the '897 Patent.

122.    Relying on the foregoing material misrepresentations and omissions by Dang, Portnoy, Gardiner, and Rosenbaum, the Patent Office issued a reexamination certificate for the claims of the '897 Patent on February 19, 2002.

### The Ingenix Litigation: Symmetry Reverts to the *1993* Conception Date

123.    In April of 2001, during the pendency of the reexamination of the '897 Patent, Ingenix sued Symmetry for patent infringement.  *See Ingenix, Inc. v. Symmetry Health Data Systems, Inc.*, No. 01-CV-704-RHK-SRN (the "Ingenix Litigation").

124.    In that lawsuit, Ingenix accused Symmetry of infringing the Seare Patent—the

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                                    - 18 -

1    same patent Symmetry claimed priority over in the MedStat Litigation and subsequently

2    submitted to the Patent Office during reexamination after shifting its conception date from

3    September 1993 to August of 1994.

4          125.    Symmetry responded to Ingenix's infringement allegations by counterclaiming

5    that Ingenix derived—or stole—the invention claimed in the Seare Patent from Dang.

6          126.    To justify its derivation claim against Ingenix, Symmetry had to once again change

7    Dang's date of conception for the invention claimed in the '897 Patent so that his conception

8    predated Seare's patent application filing date.

9

10         127.    Since the Seare Patent has a filing date of June 23, 1994, Symmetry changed Mr.

11   Dang's conception date for the '897 Patent from August of 1994 *back to September of 1993*,

12   which allowed Symmetry to argue the '897 Patent predated the Seare Patent.

13         128.    Symmetry submitted dated source code and new declarations from Dang, Portnoy,

14   and Gardiner to support Dang's renewed claim to a conception date in 1993.

15

16         129.    Ignoring the shifts it had made to Dang's conception date over the years,

17   Symmetry stated in its briefing to the Court that "Mr. Dang's *undisputed testimony* is that he first

18   conceived of the invention, which is now known as ETGs, in the summer of 1993" and that "Mr.

19   Dang conceived of the invention during the summer of 1993, that that conception was

20   communicated to Mr. Portnoy during the summer of 1993 and to Mr. Gardiner by at least

21   November 1993."

22

23         130.    The statements, declarations, and dated source code produced by Symmetry in the

24   Ingenix Litigation agreed with the original conception date disclosed in Symmetry's interrogatory

25   responses and Dang's deposition testimony during the MedStat Litigation,  but directly

26   contradicted the later sworn declarations that Dang, Portnoy, Gardiner, and Rosenbaum submitted

27   to the Patent Office during reexamination to establish a conception date of August of 1994—a

28

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD

- 19 -

date Symmetry relied on to avoid invalidity under § 102(b) as a result of its June 1994 sales offer to Aetna.

131.    Symmetry never produced to the Patent Office during reexamination the dated source code produced and relied on during the Ingenix Litigation to establish Dang's 1993 conception date.

132.    By intentionally withholding and misrepresenting the foregoing material facts and information, Symmetry caused the Patent Office to believe that Dang did not conceive of his invention until August of 1994 and that Symmetry's June 1994 sales offer to Aetna did not bar patentability.

133.    These and other misrepresentations and omissions also enabled Symmetry to obtain issuance of the '897 Patent over the Seare Patent, despite Dang's affirmative admissions during deposition that the Seare Patent disclosed the very same invention as that described in his '897 Patent.

134.    Without the intentional misrepresentations and affirmative omissions by Symmetry, Dang, Portnoy, Gardiner and Rosenbaum described above, the Patent Office would never have issued the '897 Patent or the other patents in the Dang family and it would never have issued a reexamination certificate for the '897 Patent.

135.    Symmetry, Dang, Portnoy, Gardiner, and Rosenbaum, individually and collectively made these material misrepresentations and omission knowing they were false and for the purpose of causing the Patent Office to issue the '897 Patent originally and again after reexamination.

136.    Each of these material misrepresentations and omissions represent material fraud on the Patent Office and constitute inequitable conduct which renders the claims of the entire Dang patent family—including the '897, '511, '560, '216, '333, and '290 Patents—

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                        - 20 -

unenforceable.

137.    In 2003, Ingenix purchased all of the stock of Symmetry and, on information and belief, took ownership of the Dang family of patents.

138.    As successor in title to the Dang patents, and in light of the foregoing acts of inequitable conduct, Ingenix is precluded from enforcing the '897, '511, '560, '216, '333, and '290 patents against CCGroup.

**Prayer for Relief**

WHEREFORE, CCGroup prays that the Court enter judgment:

A.    Permanently enjoining Ingenix and each of its respective officers, agents, servants, employees, and attorneys, and all of those persons in active concert or participation with them from further infringing the '126 Patent;

B.    Awarding CCGroup damages for patent infringement in an amount to be determined, including pre- and post-judgment interest;

C.    Awarding CCGroup its costs and attorneys fees pursuant to 35 U.S.C. § 285;

D.    Declaring that CCGroup has not infringed, induced others to infringe, or contributed to the infringement of any of the claims of U.S. Patent No. 7,222,079;

E.    Declaring that the claims of U.S. Patent No. 7, 222,079 are invalid;

F.    Declaring that CCGroup has not infringed, induced others to infringe, or contributed to the infringement of any of the claims of U.S. Patent No. 7,774,252;

G.    Declaring that the claims of U.S. Patent No. 7,774,252 are invalid;

H.    Declaring that CCGroup has not infringed, induced others to infringe, or contributed to the infringement of any of the claims of U.S. Patent No. 5,835,897;

I.    Declaring that the claims of U.S. Patent No. 5,835,897 are invalid;

J.    Declaring that CCGroup has not infringed, induced others to infringe, or contributed to the infringement of any of the claims of U.S. Patent No. 6,370,511;

K.    Declaring that the claims of U.S. Patent No. 6,370,511 are invalid;

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                    - 21 -

1    L.    Declaring that CCGroup has not infringed, induced others to infringe, or

2 contributed to the infringement of any of the claims of U.S. Patent No. 7,620,560;

3    M.    Declaring that the claims of U.S. Patent No. 7,620,560 are invalid;

4    N.    Declaring that CCGroup has not infringed, induced others to infringe, or

5 contributed to the infringement of any of the claims of U.S. Patent No. 7,774,216;

6    O.    Declaring that the claims of U.S. Patent No. 7,774,216 are invalid;

7    P.    Declaring that CCGroup has not infringed, induced others to infringe, or

8 contributed to the infringement of any of the claims of U.S. Patent No. 7,725,333;

9    Q.    Declaring that the claims of U.S. Patent No. 7,725,333 are invalid;

10   R.    Declaring that CCGroup has not infringed, induced others to infringe, or

11 contributed to the infringement of any of the claims of U.S. Patent No. 7,979,290;

12   S.    Declaring that the claims of U.S. Patent No. 7,979,290 are invalid;

13   T.    Declaring the '897, '511, '560, '216, '333, and '290 patents unenforceable for

14 inequitable conduct; and

15   U.    Awarding CCGroup such other and further relief as the Court finds just and

16 appropriate.

17

18

19 Dated: May 24, 2013                              ARMSTRONG TEASDALE LLP

20                                                  By:   /s/ Richard L. Brophy
                                                          Richard L. Brophy
21

22                                                  David W. Harlan (*pro hac vice*)
                                                    B. Scott Eidson (*pro hac vice*)
23                                                  Richard L. Brophy (*pro hac vice*)
                                                    ARMSTRONG TEASDALE LLP
24
                                                    Andrew Leibnitz
25                                                  FARELLA BRAUN + MARTEL LLP

26
                                                    Attorneys for Plaintiff
27                                                  CAVE CONSULTING GROUP, INC.

28

Armstrong Teasdale LLP
1700 Forsyth Blvd Suite 1800
St. Louis, MO 63105
(314) 621-5070

Second Amended Complaint
Case No. 5:11cv0469-EJD                             - 22 -