1

2

3

4

5

6          UNITED STATES DISTRICT COURT

7          NORTHERN DISTRICT OF CALIFORNIA

8          SAN JOSE DIVISION

9

10   CAVE CONSULTING GROUP, LLC,                Case No.  5:11-cv-00469-EJD

                    Plaintiff(s),              **ORDER GRANTING IN PART AND**
11                                              **DENYING IN PART DEFENDANT'S**
              v.                                **MOTION FOR SUMMARY**
12                                              **JUDGMENT; DENYING PLAINTIFF'S**
     OPTUMINSIGHT, INC.,                        **MOTION FOR SUMMARY JUDGMENT**
13
                    Defendant(s).
14                                              Re: Dkt. Nos. 139, 148

15          Plaintiff Cave Consulting Group, LLC, ("CCGroup" or "Plaintiff") brings the instant

16   action for patent infringement against Defendant OptumInsight, Inc., f/k/a Ingenix, Inc.,

17   ("OptumInsight" or "Defendant").  Presently before the Court are the parties' cross-motions for

18   summary judgment.[1]  Having carefully reviewed the parties' briefing and considered the parties'

19   arguments from the hearing on December 12, 2014, the Court GRANTS in part and DENIES in

20   part OptumInsight's motion for summary judgment, and DENIES CCGroup's motion for

21   summary judgment for the reasons explained below.

22   **I.     BACKGROUND**

23          CCGroup is a California corporation with a principal place of business in San Mateo,

24   California.[2]  OptumInsight is a Delaware corporation with a principal place of business in

25

26   _____

27   [1] Dkt. Nos. 139, 148.
     [2] Dkt. No. 89 at 2.
28                                                1

United States District Court
Northern District of California

Minnesota.[3]  CCGroup is the owner by assignment of all right, title and interest in the U.S. Patent

No. 7,739,126 ("the Cave '126 Patent" or "the '126 Patent").[4]  OptumInsight is the owner by

assignment of all right, title, and interest in the U.S. Patent Nos. 7,222,079 ("'079 Patent") and

7,774,252 ("'252 Patent") (collectively "the Seare Patents").[5]  CCGroup and OptumInsight both

develop and market software and services used to evaluate various parameters of healthcare

delivery, including the efficiency of healthcare providers.[6]  The patents-in-suit are related to

technology for measuring and evaluating physician efficiency.[7]  "Efficiency" means comparing

the cost of care provided by an individual physician to the cost of care provided by a relevant peer

group.[8]

CCGroup claims that OptumInsight's Impact Intelligence product infringes claims 1, 9,

10, 11, 22, and 29 of its '126 Patent.[9]  OptumInsight claims that CCGroup's Cave Grouper

product infringes claim 1 of the Seare Patents.[10]  The Seare Patents have a priority date of June 23,

1994.[11]

A.    The Patent Claims

Relevant here are asserted claims 22 and 29 of the Cave '126 Patent,[12] which state as

follows:

> 22. A method implemented on a computer system of determining
> physician efficiency, the method comprising:
>
> obtaining medical claims data stored in a computer readable medium
> on the computer system;
>
> performing patient analysis using said obtained medical claims data
> to form episodes of care utilizing the computer system;

---

[3] Id.
[4] Id. at 2-3.
[5] Id.
[6] Id.
[7] Id.
[8] See Dkt. No. 139 at 3:10-11.
[9] Dkt. No. 140 at 2; CCGroup has withdrawn claims 1, 9, 10, and 11.
[10] Id.
[11] '079 Patent at 1; '252 Patent at 1.
[12] Claims 22 and 29 are identical other than the preamble, which is not relevant for purposes of this motion.

2

performing output process based on performed patient analysis utilizing the computer system, the output process comprising:
assigning episodes of care to physicians; and
applying a first maximum duration rule to identify episodes of care;

assigning at least one physician to a report group utilizing the computer system;

determining eligible physicians and episode of care  assignments utilizing the computer system;

calculating condition-specific episode of care statistics utilizing the computer system;

calculating weighted episode of care statistics across medical conditions utilizing a  predefined set of medical conditions  for a specific specialty type utilizing the computer system; and

determining efficiency scores for physicians from said calculated condition-specific episode of care statistics and said weighted episode of care statistics calculated across     medical conditions utilizing the computer system.[13]

Asserted claims 1 of the Seare Patents[14]:

A computer-implemented process for processing medical claims comprising a computer performing the following:

(a) reading a medical claim data, input as at least one of a plurality of data records, into a computer memory;

(b) validating each of the at least one of a plurality of data records for at least one of a diagnosis code and a treatment code;

(c) reading at least one pre-defined relationship between the at least one of a diagnosis code and a treatment code in the validated at least one of a plurality of    data records and pre-defined episode treatment categories; and

(d) grouping the validated at least one of a plurality of data  records to an episode   treatment category based upon the pre-defined relationship, each episode treatment  category having a dynamic time window defining a time period which validated at least one of plurality of data records may be grouped to an episode treatment category.

(e) classifying the patient data records into at least one of a  plurality of episode treatment groups, each of the plurality of episode treatment groups being defined by an episode treatment category.[15]

---

[13] U.S. Patent 7,739,126.
[14] Claims 1 of the Seare Patents are identical except for the addition of step (e).
[15] U.S. Patent 7,774,252.

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

1    **B.    Procedural History**

2        This suit is an outgrowth of a lawsuit filed by OptumInsight against CCGroup in

3    Minneapolis, Minnesota.  OptumInsight dismissed the Minnesota lawsuit.  CCGroup filed its

4    Complaint in this Court seeking a declaratory judgment on the patent infringement allegations

5    made against it by OptumInsight.[16]

6        In its Second Amended Complaint ("SAC"), CCGroup claims that OptumInsight infringes

7    its Cave '126 Patent, and seeks a declaratory judgment that CCGroup does not infringe

8    OptumInsight's family of Seare Patents and that the Seare Patents are invalid.[17]

9        In its Answer to CCGroup's SAC, OptumInsight claims that it does not infringe the '126

10   Patent and that the '126 Patent is invalid, and counterclaims that CCGroup directly infringes the

11   Seare Patents.[18]

12       On August 9, 2012, the Court held a claim construction hearing.[19]  The Court construed

13   "weighted episode of care statistics" to mean "cost or length of care statistics for a group of

14   medical conditions calculated using the relative importance of each condition to the others of the

15   group."[20]  The Court ruled that the ordinary meaning of "determining eligible physicians and

16   episode of care assignments" applied.[21]  The Court construed "maximum duration rule" to mean a

17   "rule based on a maximum time period(s) that is used to group claim data pertaining to a patient's

18   medical condition(s) into an episode(s) of care."[22]

19       CCGroup now moves for summary judgment of noninfringement of the Seare Patents, and

20   invalidity of the Seare Patents.[23]  OptumInsight moves for summary judgment of noninfringement

21   of the Cave '126 Patent, invalidity of the Cave '126 Patent, and validity of the Seare Patents.[24]

22   CCGroup has also moved to exclude the testimony of OptumInsight's expert witness Dr. Mark

23   _____

24   [16] Dkt. No. 89 at 5-7.
     [17] See Dkt. No. 89.
     [18] See Dkt. No. 96.
25   [19] Dkt. No. 92.
     [20] Id. at 6.
26   [21] Id. at 9.
     [22] Id. at 11.
27   [23] Dkt. No. 148.
     [24] Dkt. No. 139.
28                                                    4

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

1 Rattray ("Rattray"), Dr. J. William Thomas ("Thomas"), and Catharine Lawton ("Lawton").[25]

2 OptumInsight has moved to exclude testimony of CCGroup's damages expert witness Michael

3 Lewis concerning CCGroup's alleged damages.[26]

## II.    LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute to any

material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. R. 56(c);

Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving party bears the

initial burden of informing the court of the basis for the motion and identifying the portions of the

pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the

absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving

party to go beyond the pleadings and designate specific materials in the record to show that there

is a genuinely disputed fact.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The court must draw

all reasonable inferences in favor of the party against whom summary judgment is sought.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, the mere

suggestion that facts are in controversy, as well as conclusory or speculative testimony in

affidavits and moving papers, is not sufficient to defeat summary judgment.  See Thornhill Publ'g

Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).  Instead, the non-moving party must come

forward with admissible evidence to satisfy the burden.  Fed. R. Civ. P. 56(c); see also Hal Roach

Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a

reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

material issue in his or her favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

(1986); see also Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991).  Conversely,

summary judgment must be granted where a party "fails to make a showing sufficient to establish

United States District Court
Northern District of California

---

[25] Dkt. No. 157.
[26] Dkt. No. 160.

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

1    the existence of an element essential to that party's case, on which that party will bear the burden

2    of proof at trial." <u>Celotex</u>, 477 U.S. at 322.

3    **III.    DISCUSSION**

4            CCGroup asserts that OptumInsight infringes method claim 22 and apparatus claim 29 of

5    the Cave '126 Patent.[27]  OptumInsight asserts that CCGroup infringes claim 1 of both Seare

6    Patents.[28]  The parties both deny infringement and contend that the asserted claims of the patents

7    of the other side are invalid.[29]  Thus, the primary factual issues in dispute are: 1. whether the

8    claims of the asserted patents are invalid; and 2. whether the asserted patents are infringed.

9            **A.    Invalidity**

10           The Court begins by addressing the parties' invalidity arguments.  OptumInsight contends

11   that the asserted claims of the '126 Patent are invalid because they do not meet the requirements

12   set forth in 35 U.S.C. §§ 102(a), 102(b), 102(g), or 112.[30]  OptumInsight contends that Seare

13   Patents are valid over the asserted prior art.[31]  CCGroup contends that the asserted claims of the

14   Seare Patents are invalid because they do not meet the requirements set forth in 35 U.S.C. §§

15   102(b) or 112.[32]

16           **i.    The Cave '126 Patent**

17           OptumInsight argues that the asserted claims are invalid as anticipated under 35 U.S.C. §§

18   102(b) and 102(g) because Impact Intelligence works the same as its predecessor product, Impact

19   Analysis, therefore, Impact Analysis satisfies every element of the asserted claims and qualifies as

20   prior art because it was:

21           (a) sold or offered for sale more than a year before the March 2, 2004 filing date of the

22           '126 Patent;

23

24

25   [27] <u>See</u> Dkt. No. 147-4 at 1-2.
     [28] <u>See</u> Dkt. No. 139 at 1-4.
26   [29] <u>See</u> <u>id.</u>; <u>see also</u> Dkt. No. 147-4 at 1-2.
     [30] <u>See</u> Dkt. No. 96.
27   [31] <u>See</u> Dkt. No. 139 at 34-38.
     [32] <u>See</u> Dkt. No. 144-4.
28

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

1    (b) publicly used by others in the United States more than a year before the March 2, 2004

2    filing date of the '126 Patent; and

3    (c) made in the United States before the invention date (March 2, 2004) of the '126 Patent

4    claims and was not abandoned, suppressed, or concealed.[33]

5    OptumInsight also argues that the asserted claims of the '126 Patent are invalid as

6    anticipated under 35 U.S.C. § 102 because the Cave webpage article (the "Cave Advertisement")

7    satisfies every element of the asserted claims and qualifies as prior art because it was posted on the

8    Internet more than a year before the March 2, 2004 filing date of the '126 Patent.[34]

9    Finally, OptumInsight argues that the asserted claims of the '126 Patent are invalid under

10   35 U.S.C. § 112, first paragraph, because there is no description of "Applying a … maximum

11   duration rule to identify episodes of care."[35]

12                a.   Whether Impact Analysis was "on sale" and was ready for patenting before

13                     March 2, 2003 pursuant to 35 U.S.C. § 102(b)?

14   OptumInsight believes it is entitled to summary judgment on the grounds that a June 4,

15   2002 contract with Presbyterian Healthcare Services ("PHS") provided that "IHCIS will deliver

16   the Impact Analysis applications and associated supporting databases via mutually agreed upon

17   formats and transmission media" invalidates the asserted claims under the § 102(b) on sale bar.[36]

18   The Court disagrees.

19   Section 102(b) of the Patent Act bars the patentability of inventions that were on sale in

20   this country more than one year prior to the date of the application for the patent.[37]   The on-sale

21   bar rule generally applies when two conditions are satisfied: 1. the product embodying the asserted

22

23   _____

24   [33] See Dkt. No. 168 at 5-12.
     [34] See Dkt. No. 168 at 22.

25   [35] See Dkt.No. 139 at 29.
     [36] See Dkt. No. 168 at 6-7; see also SB Ex. 7 at ING00081396 ¶ 10.

26   [37] See 35 U.S .C. § 102(b) ("A person shall be entitled to a patent unless the invention was … on sale in this country,
     more than one year prior to the date of the application for patent in the United States."); see also Cargill, Inc. v.

27   Canbra Foods, Ltd., 476 F.3d 1359, 1368 (Fed. Cir. 2007) (holding that any attempt to commercialize the patented
     invention more than one year prior to filing the patent application creates an "on-sale bar" that invalidates a

28   subsequently-issued patent).

7

United States District Court
Northern District of California

1    claims must be the subject of a commercial offer for sale, and 2. the invention must be ready for

2    patenting.[38]

3         As an initial matter, the '126 Patent claims priority to a provisional patent application filed

4    on March 2, 2004.[39]  For purposes of § 102(b), the "critical date" is March 2, 2003.[40]  Here,

5    OptumInsight proffers evidence of a June 4, 2002, contract with PHS that "IHCIS will deliver the

6    Impact Analysis applications …"[41]  As such, the evidence establishes that OptumInsight's contract

7    with PHS is more than a year before March 2, 2004.

8         Next, the question whether an invention is the subject of a commercial offer is a matter of

9    Federal Circuit law, analyzed under the law of contracts as generally understood.[42]  To prove that

10   an invention was the subject of a commercial sale, a defendant must demonstrate by clear and

11   convincing evidence that there was a definite sale or offer to sell more than one year prior to the

12   application for the patent, and that the subject matter of the offer to sell fully anticipated the

13   claimed invention or would have rendered the claimed invention obvious by its addition to the

14   prior art.[43]

15        Here, OptumInsight cites to the contract with PHS to sell the outputs of the Impact

16   Analysis process ███████████████████████     ██.[44]  OptumInsight demonstrates that there

17   was an offer to sell because the contract required that PHS pay IHCIS a substantial Impact

18   Analysis License Fee on an annual basis, which included 20 licensed users of Impact Analysis.[45]

19   However, the contract with PHS to sell the outputs of the Impact Analysis is a process, which is a

20   series of acts or steps, and is not sold in the same sense as is a claimed product, device, or

21

22   _____

     [38] See Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 67 (1998).

23   [39] Dkt. No. 168 at 1.
     [40] Id.

24   [41] See Dkt. No. 168 at 6-7.
     [42] Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1047 (Fed. Cir. 2001) ("As a general proposition, we will

25   look to the Uniform Commercial Code ('UCC') to define whether … a communication or series of communications
     rises to the level of a commercial offer for sale.").

26   [43] STX, LLC v. Brine, Inc., 211 F.3d 588, 590 (Fed. Cir. 2000).
     [44] See Dkt. No. 168 at 6-7; see also SB Ex. 7 at ING00081396 ¶ 10.

27   [45] SB Ex. 7 at ING00081396 ¶ 11; see also In re Caveney, 761 F.2d 671, 676 (Fed. Cir. 1985) (A sale is a contract
     between parties wherein the seller agrees "to give and to pass rights of property" in return for the buyer's payment or
     promise "to pay the seller for the things bought or sold.").

28                                                            8

     Case No.: 5:11-cv-00469-EJD
     ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
     JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

1   apparatus, which is a tangible item.[46] "Know-how describing what the process consists of and

2   how the process should be carried out may be sold in the sense that the buyer acquires knowledge

3   of the process and obtains the freedom to carry it out pursuant to the terms of the transaction."[47]

4   Such a transaction is not a "sale" of the invention within the meaning of §102(b) because the

5   process has not been carried out or performed as a result of the transaction.[48]  Here, sale of the

6   outputs of the Impact Analysis made by the claimed process by the licensee (IHCIS) would

7   constitute a sale of the process within the meaning of 35 U.S.C. 102(b).[49]

8           CCGroup argues that the Impact Analysis methodology and documents were ████████

9   ████████████████, and, for that reason, cannot be used as prior art to invalidate a

10  patent.[50]  CCGroup points to Dr. Dunn's admission that ██████████████████████

11  ██████████████████████████████████████████

12  ████████████████████████████████████

13  ████████████████████████████████████

14  ████████████████████████████████

15  Dunn Feb. 2014 Depo. at 40:7-17.

16          OptumInsight does not entirely dispute that the Impact Analysis and technical documents

17  describing that software ████████████  Instead, OptumInsight argues that a commercial sale

18  of the claimed invention is a bar, even if the sale is ████████████████[51]  Therefore, the

19  question presented is as follows: does a commercial sale by a third party of the claimed invention

20  constitute an on-sale bar if the contracts include ████████████████████████

21          The Federal Circuit has emphasized that "the overriding concern of the on-sale bar is an

22  inventor's attempt to commercialize his invention beyond the statutory term."[52]  Under the pre-

23

24  _____

25  [46] In re Kollar, 286 F.3d 1326, 1332 (Fed. Cir. 2002).
    [47] See id.

26  [48] See id.
    [49] See id. at 1333.

27  [50] See Dkt. No. 189-4 at 5.
    [51] See Dkt. No 169 at 9-11.

28  [52] STX, LLC, 211 F.3d 590

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1 | AIA[53] version of § 102(b), sales or offers for sale, kept secret from the public, may trigger the on-

2 | sale bar.[54]  Although these secret activities likely do not disclose claimed inventions to the general

3 | public, the statutory language of §102(b) is nevertheless broad enough to cover these actions.

4 | Additionally, even when a claimed invention itself is not the object of a sale or offer to sell, courts

5 | have applied a similar bar to patentability under a forfeiture rationale when a sale or offer for sale

6 | amounts to an indirect "secret commercialization" of a claimed invention.  This gap-filling theory

7 | is illustrated by the disparate treatment applied to secret commercialization of unpatented methods

8 | depending on the identity of the commercializing party.  When an inventor uses a secret,

9 | unpatented method to produce and sell goods that do not reveal the method, and does so for longer

10 | than the one-year grace period, these sales may bar the inventor from later patenting the method.[55]

11 | OptumInsight misstates patent law by suggesting that evidence of a secret commercial sale by a

12 | third party can invalidate the '126 Patent.  However, when a third party uses a secret, unpatented

13 | method to produce and sell such goods, this activity will not create a bar preventing a different

14 | inventor from later patenting the same method.[56]  Thus, under pre-AIA § 102(b) and the related

15 | forfeiture doctrine, an inventor faces a simple choice: "he must content himself with either

16 | secrecy, or legal monopoly."[57]

17 | Early public disclosure is a linchpin of the patent system.  As between a prior inventor who

18 | benefits from a process by selling its product but suppresses, conceals, or otherwise keeps the

19 | process from the public, and a later inventor who promptly files a patent application from which

20 | the public will gain a disclosure of the process, the law favors the latter.[58]

21 | Accordingly, a reasonable jury might find that OptumInsight has not met its burden of

22 | proving by clear and convincing evidence that the commercial sale by IHCIS of the claimed

---

[53] The Leahy–Smith America Invents Act (AIA) is a United States federal statute that was passed by Congress on September 16, 2011.

[54] In re Caveney, 761 F.2d 675-76

[55] See D.L. Auld Co. v. Chroma Graphics Corp., 714 F.2d 1144, 1147-48 (Fed. Cir. 1983).

[56] See W.L. Gore & Associates v. Garlock, Inc., 721 F.2d 1540, 1549-50 (Fed. Cir. 1983).

[57] Metallizing Eng'g Co. v. Kenyon Bearing & Auto Parts Co., 153 F.2d 516,518 (2nd Cir. 1946).

[58] W.L. Gore & Assoc.s, Inc., 721 F.2d 1540; RCA Corp. v. Data Gen. Corp., 887 F.2d 1056, 1062 (Fed. Cir. 1989) ("one policy underlying the [on-sale] bar is to obtain widespread disclosure of new inventions to the public via patents as soon as possible.").

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

1    invention constituted an on-sale bar because █████████████████████████

2    ██████    Therefore, the Court DENIES OptumInsight's summary judgment as to invalidity

3    under the § 102(b) on-sale bar based on the Federal Circuit's holding that where an invention is

4    kept secret, and remains secret after a sale of the product, that sale will not bar another inventor

5    from the grant of a patent on that method.[59]

6                   b.   Whether Impact Analysis was in public use before March 2, 2003 pursuant to

7                        U.S.C. § 102(b)?

8            OptumInsight moves for summary judgment on the grounds that IHCIS commercially

9    exploited Impact Analysis and that the Impact Analysis methodology was accessible to the public

10   before March 2, 2003.[60]  Having reviewed the evidence, the Court disagrees.

11           The public use bar under 35 U.S.C. § 102(b) arises where the invention is in public use

12   before the critical date and is ready for patenting.[61]  As explained by the Federal Circuit,

13

14           The proper test for the public use prong of the § 102(b) statutory bar
             is whether the purported use: (1) was accessible to the public; or (2)
15           was commercially exploited. Commercial exploitation is a clear
             indication of public use, but it likely requires more than, for
16           example, a secret offer for sale. Thus, the test for the public use
             prong includes the consideration of evidence relevant to
17           experimentation, as well as, inter alia , the nature of the activity that
             occurred in public; public access to the use; confidentiality
18           obligations imposed on members of the public who observed the
             use; and commercial exploitation ....

19   Id. at 1380.

20           CCGroup argues that Impact Analysis methodologies and technical documents describing

21   the software were maintained in confidence and not publicly available.[62]  As such, the

22   confidentiality restrictions imposed by ICHIS preclude a finding that Impact Analysis is prior

23   art.[63]  OptumInsight does not contest that some confidentiality agreements existed.  Rather,

24   OptumInsight argues that while some details were confidential, the underlying methodology used

25   _____

26   [59] See D.L. Auld Co., 714 F.2d 1144
     [60] See Dkt. No. 168 at 8-11.
27   [61] Invitrogen Corp. v. Biocrest Manufacturing L.P., 424 F.3d 1374 (Fed. Cir. 2005).
     [62] See Dkt. 189-4 at 6-12.
28   [63] See Dkt. No. 147-4 at 16-18.

     Case No.: 5:11-cv-00469-EJD
     ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
     JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

in Impact Analysis was disclosed, at least at a high level to the general public and to certain third parties.[64]

Public use by a third party within the meaning of § 102(b) generally includes "any use of the claimed invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor."[65] To determine whether the use of the invention was indeed "public" within the meaning of § 102(b), courts assess the "totality of circumstances."[66]

A flexible list of factors that courts can consider includes: the nature of the activity that occurred in public; the public access to and knowledge of the public use; whether person other than the inventor performed the testing; the number of tests; the length of the test period in relation to tests of similar devices; and whether the inventor received payment for the testing.[67] While all of these factors are considered, relinquishment of control by the patentee and the presence of absence of a secrecy agreement appear to carry the most weight.[68]

OptumInsight's corporate witness, Dr. Dunn, admitted that IHCIS treated the Impact Analysis methodology as



Dunn Feb. 2014 Depo. at 40:7-13.

OptumInsight, however, argues that IHCIS was openly engaging in the commercial exploitation of the methodology embodied in Impact Analysis before March 2, 2003.[69] OptumInsight alleges that the numerous sales, marketing material on the IHCIS website and press releases announcing these sales fully establish commercial exploitation.[70] Specifically,

---

[64] See Dkt. No. 169 at 9-11.
[65] Netscape Communications Corp. v. Knorad, 295 F.3d 1315, 1320 (Fed. Cir. 2002).
[66] Netscape, 295 F.3d 1320
[67] Id.
[68] See Allied Colloids Inc. v. American Cyanamid Co., 64 F.3d 1570, 1574 (Fed. Cir. 1995).
[69] See Dkt. No. 168 at 8.
[70] See id.

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

OptumInsight cites that: (1) the contract with PHS included a "Fees and Payment Schedule" that included a substantial "Impact Analysis License Fee" as well as other licensing fees;[71] (2) a September 25, 2002 press release publicly announced that Presbyterian Health Plan (PHP), New Mexico's largest managed care organization, will deploy IHCIS' Impact Analysis;[72] and (3) that IHCIS maintained a publicly available website targeting customers and potential customers of Impact Analysis and describing IHCIS products, including Impact Analysis.[73]  OptumInsight contends that this record of commercial sales and promotional activity by IHCIS illustrates commercial exploitation.[74]  This is not a persuasive argument, though, because the Federal Circuit has held that mere knowledge of the invention by the public does not warrant rejection under § 102(b).[75]  Section 102(b) bars public use or sale, not public knowledge.[76]  Moreover, in the case of third-party uses, as in this case, "being accessible to the public still requires public availability; secret or confidential third-party uses do not invalidate later filed patents."[77]

Accordingly, in light of the clear and convincing evidence standard for proving invalidity, the court concludes a reasonable jury could find that OptumInsight has not met its burden of showing that the Impact Analysis was accessible to public before March 2, 2003.  Therefore, the Court DENIES OptumInsight's summary judgment of invalidity under the public use prong of § 102(b) based on the confidentiality agreements.

        c.  Does Impact Analysis represent a prior invention under 35 U.S.C. § 102(g) that was not abandoned, suppressed, or concealed?

OptumInsight asserts that the claims of the '126 Patent, if read to cover Impact Analysis, are invalid under 35 U.S.C. § 102(g)(2).[78]  The Court disagrees.

---

[71] SB Ex. 7 at ING00081396 ¶ 11
[72] SB Ex. 8
[73] SB Ex. 1 at ¶¶ 23 & 24
[74] See Dkt. No. 168 at 9.
[75] TPLabs., Inc. v. Professional Positioners, Inc., 724 F.2d 965, 970 (Fed. Cir. 1984).
[76] Id.
[77] Dey, L.P. v. Sunovion Pharm.s, Inc., 715 F.3d 1351 (Fed. Cir. 2013); see also Dunn Feb. 2014 Depo. at 40:7-13.
[78] See Dkt. No. 168 at 11.

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

1    Section 102(g)(2) provides that a patent is invalid if "before such person's invention

2    thereof, the invention was made in this country by another inventor who had not abandoned,

3    suppressed or concealed it."[79]

4        Here, OptumInsight argues that Impact Analysis was in public use before March 2, 2003,

5    and that Impact Analysis was invented before March 2, 2004.[80] CCGroup argues that Impact

6    Analysis is not invalidating art because the methodologies and technical documents describing

7    that software were maintained in confidence and not publicly available.[81]

8        Under 35 U.S.C. § 102(g) "the courts have consistently held that an invention, though

9    completed, is deemed abandoned, suppressed, or concealed if, within a reasonable time after

10   completion, no steps are taken to make the invention publicly known.  Thus failure to file a patent

11   application; to describe the invention in a publicly disseminated document; or to use the invention

12   publicly, have been held to constitute abandonment, suppression, or concealment."[82]  In Correge,

13   an invention was actually reduced to practice, seven months later there was a public disclosure of

14   the invention, and eight months thereafter a patent application was filed.  The court held that filing

15   a patent application within one year of a public disclosure is not an unreasonable delay, therefore

16   reasonable diligence must only be shown between the date of the actual reduction to practice and

17   the public disclosure to avoid the inference of abandonment.[83]  Unlike Correge, OptumInsight's

18   Impact Analysis methodologies and technical documents were maintained in confidence and not

19   publicly available before March 2, 2003.[84]

20       For the same reason relating to lack of public disclosure, OptumInsight's § 102(g)

21   argument fails.  Private or confidential sales, those that do not confer knowledge of the invention

22   to the public, do not constitute invalidating art under § 102(g).[85]  Accordingly, a reasonable jury

23   might find that OptumInsight has not met its burden of proving by clear and convincing evidence

24   _____

25   [79] See 35 U.S.C. § 102(g)(2).
     [80] See Dkt. No. 169 at 5-6.
26   [81] See Dkt. No. 189-4 at 6-12.
     [82] Correge v. Murphy, 705 F.2d 1326, 1330 (Fed. Cir. 1983).
27   [83] See id.
     [84] See Dkt. 189-4 at 6-12; see also Dunn Feb. 2014 Depo. at 40:7-13.
28   [85] See Apotex USA v. Merck & Co., 254 F.3d 1031, 1038-39 (Fed. Cir. 2010).

14

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

1    that the Impact Analysis methodologies and the technical documents describing that software were

2    not maintained in confidence and publicly available.  Therefore, the Court DENIES

3    OptumInsight's summary judgment as to invalidity under § 102(g).

          d.   Does the Cave Advertisement anticipate the asserted claims?

4

5          OptumInsight moves for summary judgment on the grounds that the Cave Advertisement

6    anticipates Claims 22 and 29 of the '126 Patent.[86]  Having reviewed the evidence, the Court

7    disagrees.

8          A patent claim is invalid as anticipated under 35 U.S.C. § 102 if a single prior art reference

9    contains, either explicitly or implicitly, all of the elements of the claim.[87]  Whether or not a single

10   reference contains all of the elements of a claim is a question of fact.[88]

11         Although anticipation is a question of fact, where there are no "genuine factual disputes

12   underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law."[89]  Evidence

13   of anticipation, like all questions of invalidity, "must be clear as well as convincing."[90]  The

14   Federal Circuit has held that "the identical invention must be shown in as complete detail as is

15   contained in the … claim."[91]  The elements must be arranged as required by the claim, but this is

16   not an *ipsissimis verbis* test, i.e., identity of terminology is not required.[92]

17         CCGroup makes a series of argument in response.  First, CCGroup argues that there is no

18   evidence that the Cave Advertisement was publicly available.[93]  As such, without this evidence,

19   CCGroup argues that OptumInsight cannot meet its burden of proof on invalidity.[94]  The U.S.

20   Patent and Trademark Office ("PTO") has held that a website captured by Internet Archive

21

22   ───────────────────
     [86] See Thomas Invalidity Report at Exhibit 18.
23   [87] See Oakley, Inc. v. Sunglass Hut International, 316 F.3d 1331, 1339 (Fed. Cir. 2003) (A determination that a claim
     is invalid as being anticipated or lacking novelty under 35 U.S.C. § 102 requires a finding that "each and every
24   limitation is found either expressly or inherently in a single prior art reference").
     [88] See Beckson Marine, Inc. v. NFM, Inc., 292 F.3d 718, 725 (Fed. Cir. 2002) (Anticipation under 35 U.S.C. § 102
25   means lack of novelty, and is a question of fact).
     [89] SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1343 (Fed. Cir. 2005).
26   [90] Schumer v. Lab. Computer Sys., Inc., 308 F.3d 1304, 1315 (Fed. Cir. 2002).
     [91] Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1236 (Fed. Cir. 1989).
27   [92] In re Bond, 910 F.2d 831 (Fed. Cir. 1990).
     [93] See Dkt. No. 147-4 at 25-26.
28   [94] Id.

     Case No.: 5:11-cv-00469-EJD
     ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
     JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

1    Wayback Machine ("Internet Archive")[95] was considered as prior art.[96]  The PTO will accept date

2    stamps from the Internet Archive as evidence of when a given Web page was accessible to the

3    public.[97]  These dates are used to determine if a Web page is available as prior art.[98]  Here,

4    OptumInsight provides evidence that the Internet Archive archived the Cave Advertisement as of

5    February 17, 2003.[99]  This date proves that there was no barrier to members of the general public

6    accessing the Cave Advertisement at that time.[100]

7          Second, CCGroup argues that the Cave Advertisement does not teach all the essential

8    claim limitations required by the asserted Claims 22 and 29 of the '126 Patent.[101]  Specifically,

9    CCGroup asserts that OptumInsight relies on a single sentence from the Cave Advertisement to

10   satisfy three limitations of the asserted claims.[102]  That sentence reads: "[a] methodology

11   developed by the Cave Consulting Group examines condition-specific, longitudinal episodes of

12   care."[103]  According to OptumInsight, this sentence satisfies the limitations of the following three

13   limitations of CCGroup's asserted claims 22 and 29:

14              Obtaining  medical  claims  data  stored  in  a  computer  readable
                medium on the computer system;
15
                Performing patient analysis using said obtained medical claims data
16              to form episodes of care utilizing the computer system;

17              Applying a first maximum duration rule to identify episodes of care

18   See Exhibit 18 to Thomas Invalidity report.

19   CCGroup contends that this sentence from the Cave Advertisement does not teach these three

20   steps of the asserted claims because:

21              1. It has nothing to do with obtaining medical claims data stored in a
                computer  readable  medium,  does  not  describe  how  episodes  are
22

23   _____
     [95] Internet Archive Wayback Machine is a digital archive of the World Wide Web and other information on the
     Internet.  It enables users to see archived versions of webpages across time.
24   [96] See Ex Parte Hicks, No. 2011-007925, 2013 WL 5882933, at *4 (P.T.A.B. Oct. 31, 2013).
     [97] See In re Wyer, 655 F.2d at 221, 210 USPQ at 790; see also MPEP 2128.
25   [98] See Ex Parte Molander, No. 2008-2589, 2009 WL 726751, at *3, 5-6 (B.P.A.I. 2009).
     [99] See Dkt. No. 169 at 26-28.
26   [100] Id.
     [101] See Dkt. No. 147-4 at 26-29.
27   [102] Id.
     [103] See Exhibit 18 to Thomas Invalidity Report.
28                                                    16
     Case No.: 5:11-cv-00469-EJD
     ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
     JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

generated, whether they are provided to CCGroup or are generated by CCGroup, what information is used to generate the episodes, or what information is stored in the episodes (e.g. actual medical claims data vs. overall cost and duration of care information);

2. the … reference to "episodes" relied on by Optum[Insight] could be created based on a methodology that generates episodes from data other than claims data (e.g., inpatient hospital records) or through a methodology that does not involve patient analysis (e.g., physician-centric episodes rather than patient-centric episodes);

3. With regard to the third limitation, Thomas properly admits that nothing in the Cave Advertisement explicitly teaches the step of applying a maximum duration rule. … ("The paper does not disclose 'using a first maximum duration rule to identify episodes of care.'"). Instead, Thomas argues that if Impact Intelligence - the product CCGroup accuses of infringement - is found to infringe, the Cave Advertisement's reference to "longitudinal episodes of care" will similarly anticipate the asserted claims. … Thomas's reasoning, which is confusing at best, suggests that those skilled in the art would simply realize that the reference to "longitudinal episodes of care" necessarily requires application of a maximum duration rule - that is "a rule based on a maximum time period that is used to group claim data pertaining to a patient's medical conditions into an episode of care."

Dkt. No. 147-4 at 27-28.

OptumInsight argues that the Cave Advertisement inherently discloses obtaining medical claims data stored in a computer readable medium on the computer system.[104]  Specifically, OptumInsight argues that "it was well known in the art that forming episodes of care and performing physician efficiency measurement was a data intensive process and that claims groupers necessarily operated on electronically stored medical claims records."[105]  OptumInsight also argues that "one of ordinary skill in the art would have understood that, in order to 'examine condition-specific, longitudinal episodes of care' as disclosed in the 'Cave Advertisement,' the disclosed methodology must first form those episodes of care."[106]

However, "[a]nticipation is typically established by one skilled in the art who must identify each claim element, state the witness['] interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference."[107]  OptumInsight fails to explain in

---

[104] See Dkt. No. 169 at 22-23.
[105] Id.
[106] Id. at 23.
[107] Lucent Technologies, Inc. v. Microsoft Corp., 544 F. Supp. 2d 1080, 1091 (S.D. Cal. 2008).

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

1    detail how each claim element is disclosed in the single sentence of the Cave Advertisement.

2    Moreover, the testimony is insufficient if it is merely conclusory.[108]  It must be clear.  For

3    example, OptumInsight's argument that "if this step is read so broadly as to reach Impact

4    Intelligence, applying the same claim scope, one of the ordinary skill in the art would have

5    understood that the methodology disclosed in the 'Cave Advertisement' necessarily discloses this

6    step' is merely conclusory.[109]  It is not "the task of the district court, to attempt to interpret

7    confusing or general testimony to determine whether a case of invalidity has been made out,

8    particularly at the summary judgment stage."[110]

9         Because the uncontroverted evidence demonstrates that the Cave Advertisement does not

10   anticipate each and every element as set forth in the asserted claims, either expressly or inherently,

11   summary judgment as to invalidity is improper.  Therefore, the Court DENIES OptumInsight's

12   summary judgment as to invalidity under 35 U.S.C. § 102 of the asserted claims by the Cave

13   Advertisement.

14             e.  Whether the claim limitations found in the asserted claims of the '126 Patent

15                 are invalid under 35 U.S.C. § 112?

16        OptumInsight argues that Claims 22 and 29 are invalid for lack of written description and

17   enablement under 35 U.S.C. § 112(a) because the '126 Patent specification fails to describe

18   applying a maximum duration rule to identify episodes of care and is devoid of an enabling

19   disclosure of how to apply a maximum duration rule to identify episodes of care.[111]  Having

20   reviewed the evidence, the Court disagrees.

21        The first paragraph of 35 U.S.C. § 112 require that the specification include the following:

22             (A) A written description of the invention;

23             (B) The manner and process of making and using the invention (the enablement

24             requirement); and

25

26   _____
     [108] Schumer, 308 F.3d at 1315-16.
27   [109] See Dkt. No. 169 at 25.
     [110] Id. at 1316.
28   [111] See Dkt. No. 139 at 32-34; see also Dkt. No. 188 at 19-20.

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

1         (C) The best mode contemplated by the inventor of carrying out his invention.[112]

2         To satisfy the written description requirement, the specification must describe the claimed

3    invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor

4    had possession of the claimed invention.[113]  Specifically, the specification must describe the

5    claimed invention in a manner understandable to a person of ordinary skill in the art and show that

6    the inventor actually invented the claimed invention.[114]  The enablement requirement refers to the

7    requirement that the specification describe how to make and how to use the invention.[115]  The

8    invention that one skilled in the art must be enabled to make and use is that defined by the claim(s)

9    of the particular application or patent.[116]  In contrast to the written description, the adequacy of

10    enablement is a question of law, although like claim constructions, enablement findings may have

11    factual underpinnings.[117]

12         OptumInsight argues that Claims 22 and 29 are invalid for lack of written description

13    because the '126 Patent specification fails to describe applying a maximum duration rule to

14    identify episodes of care.[118]  Specifically, OptumInsight argues that CCGroup improperly relies on

15    references in the specification to the use of maximum duration rules to refine episodes of care,

16    when the claim language requires using maximum duration rules to identify episodes of care.[119]

17    Further, OptumInsight argues that the specification is devoid of an enabling disclosure of how to

18    apply a maximum duration rule to identify episodes of care.[120]  Lastly, OptumInsight argues that

19    this issue can be decided at summary judgment, because claim construction is an issue of law for

20    the court.[121]

21

22

---

23    [112] 35 U.S.C. § 112(a).

24    [113] <u>Vas-Cath, Inc. v. Mahurkar</u>, 935 F.2d 1555, 1562-63 (Fed. Cir. 1991).

    [114] <u>Id.</u>

25    [115] <u>CFMT, Inc. v. Yieldup Int'l Corp.</u>, 349 F.3d 1333, 1338 (Fed. Cir. 2003)

    [116] <u>Id.</u>

26    [117] <u>Martek Biosci. Corp. v. Nutrinova, Inc.</u>, 579 F.3d 1363, 1378 (Fed. Cir. 2009).

    [118] <u>See</u> Dkt. No. 139 at 32-33.

27    [119] <u>Id.</u>

    [120] <u>Id.</u>

28    [121] <u>Id.</u>

Case No.: <u>5:11-cv-00469-EJD</u>
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

1    Here, OptumInsight requests the Court to construe the phrase "to identify" as to the written

2    description and enablement of the asserted claims under § 112(a).  However, the Court has already

3    construed claims and issued an order on that subject.[122]  Neither party requested construction of

4    this phrase previously, and the Court will not construe it now.

5    CCGroup argues that the specification of the '126 Patent provides ample written

6    description of the invention, including examples of how that invention is implemented.[123]  For

7    example, the specification teaches application of a dynamic time window that can be used as a

8    maximum duration rule to identify episodes of care for subsequent analysis:

9
10    The specified time period, or window period, is based on the
       maximum number of days between contact with a provider for
       which follow-up care is still reasonable. Each of the medical
11    conditions has its own unique window period. If the date of service
       for a patient's episode is separated by a longer period than the
12    window period, the latest date of service considered the start date for
       a new condition-specific episode of care.

13    See '126 Patent at 45:65-46:59.

14    CCGroup argues that the specification also discloses the use of a static time window (a second

15    form of maximum duration rule) that controls the maximum duration for chronic episodes of care:

16
17    The fourth function of the PATAN output process is to implement
       the maximum duration rule for episodes of care, which is 180 days.
       For chronic conditions (e.g. diabetes, asthma, ischemic heart
18    disease), an episode of care begins when a CLI is initially found
       during the study period that has a defined ICD.9 code that has been
19    assigned to that medical condition. Then, chronic conditions may
       continue on indefinitely as recognized by the window period of 365
20    days. However, for the purposes of physician efficiency analysis,
       chronic conditions are considered to have a 180-day duration.
21    Therefore, a chronic condition ends 180 days after identifying the
       first CLI with a diagnosis (defined ICD.9 code) for the specific
22    chronic condition.

23    See '126 Patent at 67:61-68:10.

24    These disclosures from the specification establish that there is written description support in the

25    specification for the maximum duration rule limitation of the asserted claims.[124]

26
_____

27    [122] See Dkt. No. 92.
       [123] See Dkt. No. 167-4 at 34.
28    [124] See Dkt. No. 167-4 at 34.

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

1    Further, CCGroup argues that disclosure in the specification establish that there is written

2    description support in the specification for the maximum duration rule limitation of the asserted

3    claims.[125]   The citations above explain how one skilled in the art would employ both static and

4    dynamic time windows to gather claim data into discreet episodes of care, therefore identifying

5    episodes of care.[126]

6          Finally, at a minimum, OptumInsight's written description and enablement argument

7    presents a factual dispute that should be resolved by the jury after hearing from the experts on the

8    scope, content and disclosure of the '126 Patent.[127]   Therefore, the Court DENIES OptumInsight's

9    summary judgment as to invalidity under § 112(a) because the evidence raises a genuine dispute

10   of material fact as to whether the '126 Patent's specification provides adequate written description

11   and enablement for the asserted claims.

12          **ii.    Seare Patents**

13                **a.    Whether the Seare Patents are anticipated by the Cave Article or by the Aetna**

14                    **Proposal?**

15          OptumInsight moves for summary judgment on the grounds that the invention claimed in

16   the Seare patents are valid and not anticipated by the two prior art publications: 1. an article

17   describing a study conducted by Douglas Cave ("the Cave Article"); and 2. a June 12, 1994,

18   proposal to Aetna ("Aetna Proposal").[128]   CCGroup moves for summary judgment on the grounds

19   that the invention claimed in the Seare Patents is anticipated by the Cave Article.[129]   For the

20   purposes of this motion, OptumInsight focuses on one element common to both Seare Patents:

21   element (d), directed to a "dynamic time window."[130]

22

23

24   ───────────────────
     [125] Id. at 35.
     [126] Id.
25   [127] See Scriptpro, LLC v. Innovation Assoc., Inc., 762 F.3d 1355, 1359 (Fed. Cir. 2014) (written description presents a
     question of fact for the jury); see also Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1373. (Fed. Cir. 2005)
26   (enablement is a question of law based on underlying facts).
     [128] See Dkt. No. 139 at 34-38.
27   [129] See Dkt. No. 147-4 at 37-38.
     [130] Id.
28                                                              21

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

First, OptumInsight argues that the Cave Article does not disclose dynamic time windows. The Court has construed the term "dynamic time window" to mean "a time period that can reset based upon receipt of related claim records within a predefined time period."[131]  The Cave Article references "window period[s]," but it does not disclose time periods that reset.  Specifically, OptumInsight argues that a person of ordinary skill in the art in 1994 would not have been aware of methodologies used to implement time windows that reset, and the language used in the Cave Article would have been understood to mean a fixed window period from the start of an episode because that is how groupers worked at that time.[132]  CCGroup responds that the Cave Article does teach the methodology that incorporates an algorithm for grouping raw medical claim data into episodes of care.[133]  Based on the foregoing disclosure, it presents a factual dispute that the Cave Article teaches use of a dynamic time window to build episodes of care that must be resolved by the jury at trial.

Therefore, the Court DENIES OptumInsight's summary judgment as to validity of the Seare Patents because the evidence raises a genuine dispute of material fact as to whether the Cave Article teaches use of a dynamic time window to build episodes of care.

Second, OptumInsight argues that the Aetna Proposal is not prior art because the reference was not made publicly available.[134]  However, CCGroup argues that the Aetna Proposal is anticipating prior art under 35 U.S.C. § 102(g), where it must only show that the system described in the Aetna Proposal was not "abandoned, suppressed or concealed."[135]

For the same reason relating to the earlier lack of public disclosure arguments under § 102(b) and § 102(g), CCGroup's § 102(g) argument fails.  Private or confidential sales, those that do not confer knowledge of the invention to the public, do not constitute invalidating art under § 102(g).[136]  Accordingly, CCGroup has not raised a genuine issue of material fact as to the Aetna

---

[131] Dkt. 92 at 22.
[132] RR ¶¶ 25, 27, 29.
[133] See Dkt. No.167-4 at 37-38.
[134] Id. at 37.
[135] See Dkt. No. 167-4 at 38.
[136] See Apotex, 254 F.3d 1038-39.

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

1    Proposal.  Therefore, the Court GRANTS OptumInsight's summary judgment concerning the

2    validity of the Seare Patents relating to the Aetna Proposal.

3          Finally, CCGroup argues that the asserted claims of the Seare Patents are invalid because

4    they are anticipated by the Cave Article.[137]  Specifically, CCGroup argues that the Cave Article

5    teaches reading in claims data, validating that data, and reading a pre-defined relationship between

6    the coding in that data and established medical conditions.[138]  However, as explained earlier, the

7    Cave Article does not disclose a "dynamic time window."[139]  Accordingly, given the clear and

8    convincing evidence standard, a reasonable jury could find that CCGroup has not met its burden

9    of showing that the Cave Article does not anticipate each and every element as set forth in the

10   asserted claims of the Seare Patents.  Therefore, the Court DENIES CCGroup's summary

11   judgment as to invalidity of the asserted claims of the Seare Patents.

12               b.   Whether the asserted claims of the Seare Patents are definite and enabled

13                    under 35 U.S.C. § 112?

14         CCGroup asserts that element (d), the "grouping" step, is indefinite and lacks enablement

15   because they are "fatally vague and are also inoperable."[140]  Specifically, the seemingly two

16   conflicting requirements in the claimed grouping step: (1) satisfying the predefined relationship

17   between the claimed data and the episode treatment category, and (2) satisfying the temporal

18   requirements of the "dynamic time window" for that episode treatment category.[141]  The Court

19   disagrees.

20         Patents are presumed to be valid, and the party challenging the validity of a patent bears

21   the burden of proving invalidity by clear and convincing evidence.[142]  The Court looks to the

22   intrinsic evidence because it is the primary source for determining the meaning of a claim.[143]

23   Here, the patent examiner rejected claim of the '079 patent as allegedly failing to provide an

24

[137] See Dkt. No. 147-4 at 38.
[138] Id. at 40.
[139] See Dkt. No. 139 at 34-38.
[140] See Dkt. No. 147-4 at 38.
[141] See CCGroup Ex. 25 at ¶ 76.
[142] 35 U.S.C. § 282
[143] Phillips v. AWH Corp., et al., 415 F.3d 1303, 1312-1324 (Fed. Cir. 2005).

23

United States District Court
Northern District of California

1    enabling disclosure for this element.[144] In response, the applicant provided a detailed description

2    of how this feature is enabled by the disclosure, including providing an analysis of the source code

3    appendix.[145] The patent examiner withdrew the rejection.[146]

4          Accordingly, in light of the clear and convincing evidence standard for proving invalidity,

5    a reasonable jury could find that CCGroup has not met its burden of showing that the specification

6    in the Seare Patents are not definite and enabling under 35 U.S.C. § 112. Therefore, the Court

7    DENIES CCGroup's summary judgment of invalidity relating to the asserted claims of the Seare

8    Patents under §112.

9         **B.    Non-Infringement**

10        Both parties move for summary judgment on the infringement issue. OptumInsight moves

11    for summary judgment of non-infringement on all of CCGroup's asserted claims in the '126

12    Patent.[147] CCGroup moves for summary judgment of non-infringement on all asserted claims in

13    the Seare Patents.[148] The Court DENIES both motions for summary judgment for the following

14    reasons.

15         **i.    The Cave '126 Patent**

16        OptumInsight moves for summary judgment on three non-infringement arguments with

17    respect to asserted claims 22 and 29 of the '126 Patent.[149] Specifically, OptumInsight argues that

18    Impact Intelligence uses a different method, and it does not infringe any of the asserted claims of

19    the '126 Patent because Impact Intelligence does not: (1) use a "maximum duration rule to

20    identify" episodes of care; (2) perform a step of "determining eligible physicians and episode of

21    care assignments"; and (3) "calculat[e] weighted episode of care statistics across medical

22    conditions utilizing a predefined set of medical conditions."[150] Having reviewed the evidence, the

23    Court disagrees.

24

25    <sup>144</sup> See Ex. 28 at ING00001552-56.
     <sup>145</sup> See id. at ING00001559-68.

26    <sup>146</sup> See id. at ING00001731-33.
     <sup>147</sup> Dkt. No. 139.

27    <sup>148</sup> Dkt. No. 169.
     <sup>149</sup> Dkt. No. 139 at 11-12.

28    <sup>150</sup> Id.

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

A claim for patent infringement must be proven by a preponderance of evidence.[151]  Patent infringement is a two-step inquiry.  First, the court must construe the asserted patent claim(s) as a matter of law.[152]  Second, the fact finder – here, the court for purposes of summary judgment – must determine whether the accused product, composition, system, or process contains each limitation of the properly construed claims, either literally or under the doctrine of equivalents.[153]  The first step is a question of law; the second step is a question of fact.[154]

"Summary judgment on the issue of infringement [or noninfringement] is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents."[155]  To be entitled to summary judgment of noninfringement, the moving party must demonstrate that the facts and inferences, when viewed in the light most favorable to the nonmoving party, would not persuade a reasonable jury to return a verdict in favor of the nonmoving party – the patent owner.[156]

First, the Court has already heard and resolved these issues through the claim construction hearing.[157]  For example, the Court construed "'maximum duration rule' shall mean 'rule based on a maximum time period(s) that is used to group claim data pertaining to a patient's medical condition(s) into an episode(s) of care.'"[158]  The Court based its definition on its recognition that the '126 Patent's specification and claims "make clear [that] the maximum duration rule is used to control the formation of episodes of care …"[159]  Now, OptumInsight requests the Court for construction of the new term "identify."[160]  However, a "trial judge need not repeat or restate

---

[151] <u>Advanced Cardiovascular Sys., v. Scimed Life Sys., Inc.</u>, 261 F.3d 1329, 1336 (Fed. Cir. 2001).
[152] <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 372-74 (1996); <u>Cybor Corp., v. FAS Techs., Inc.</u>, 138 F.3d 1448, 1454 (Fed. Cir. 1998).
[153] <u>Id.</u>
[154] <u>Markman</u>, 517 U.S. at 372-74; <u>Ferguson Beauregard v. Mega Sys., Inc.</u>, 350 F.3d 1327, 1338 (Fed. Cir. 2003).
[155] <u>PC Connector Solution LLC v SmarDisk Corp.</u>, 406 F.3d 1359, 1364 (Fed. Cir. 2005).
[156] <u>Bus. Objects, S.A. v. Microstrategy, Inc.</u>, 393 F.3d 1377, 1378 (Fed. Cir. 2005) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).
[157] Dkt. No. 92.
[158] Dkt. No. 92 at 11.
[159] <u>Id.</u>
[160] Dkt. No. 139

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

every claim term in order to comply with the ruling that claim construction is for the court as it is not an obligatory exercise in redundancy."[161]   OptumInsight's argument for the new term "identify" is an attempt to re-litigate the scope of the "maximum duration rule" limitation.  As such, "restating a previously settled argument does not create an 'actual dispute regarding the proper scope of the claims' within the meaning of the "maximum duration rule" limitation.[162]  Similarly, OptumInsight's argument regarding "predefined set" term is an attempt to re-litigate the "calculating weighted episode of care statistics across medical conditions utilizing a predefined set of medical conditions."[163]  The Court has already construed "'Weighted Episode of Care Statistics' shall mean 'cost or length of care statistics for a group of medical conditions calculated using the relative importance of each condition to the others of the group."[164]  These are both arguments the Court heard and construed during claim construction.[165]  Because the Court has already resolved these issues through the construction of the terms, the Court is not obligated to provide another claim construction to these new terms.[166]

Finally, the Court has construed that the ordinary meaning of the term "determining eligible physicians and episode of care assignments" shall apply.[167]  OptumInsight argue that Impact Intelligence does not have a step of "determining eligible physicians and episode of care assignments," rather it simply assigns the physicians to report groups and episodes to physicians using a peer group definition, and does not perform an additional step of "determining" whether such previously made assignments are "eligible."[168]  Further, OptumInsight argues that the claims require that the "determining" step come after the "assigning" steps.[169]  In response, CCGroup

---

[161] <u>U.S. Surgical Corp. v. Ethicon, Inc.</u>, 103 F.3d 1554, 1568 (Fed. Cir. 1997); <u>see also</u> <u>Finjan, Inc. v. Secure Computing Corp.</u>, 626 F.3d 1197, 1207 (Fed. Cir. 1997) ("Defendants attempted to resurrect a claim construction that the district court already rejected, without offering a new definition.  Restating a previously settled argument does not create an 'actual dispute regarding the proper scope of the claims' within the meaning of 02 Micro.  In this situation, the district court was not obligated to provide additional guidance to the jury.").
[162] <u>See</u> <u>Finjan</u>, 626 F.3d 1207.
[163] Dkt. No. 139
[164] Dkt. No. 92 at 6.
[165] <u>Id.</u>
[166] <u>See</u> <u>id.</u>
[167] Dkt. No. 92 at 9.
[168] <u>See</u> Dkt. 139 at 18-19; <u>see also</u> Dkt. No. 188 at 5-12.
[169] <u>Id.</u>

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1  argues that there is nothing in the asserted claims requiring that the determining step be performed

2  in a specific order relative to the assigning steps of the asserted claims.[170]  Moreover, CCGroup

3  argues that a proper claim interpretation allows the determining step to be performed before, after,

4  or contemporaneously with the assigning step.[171]

5  This is a dispute between parties as to how a skilled artisan would interpret the plain and

6  ordinary meaning of the terms at issue.  However, disputes over how one skilled in the art would

7  understand the plain meaning of term raises a factual question that must be resolved by the jury.[172]

8  Therefore, "at trial parties may introduce evidence as to the plain and ordinary meaning of the

9  terms not construed by the Court to one skilled in the art, so long as the evidence does not amount

10  to arguing claim construction to the jury."[173]

11  All three of OptumInsight's non-infringement arguments for Claims 22 and 29 turn on the

12  factual question of how one skilled in the art would interpret the plain meaning of the claim terms.

13  Because such questions must be resolved by the jury, it would be inappropriate for the Court to

14  entertain OptumInsight's request for summary judgment of non-infringement at this point.[174]

15  Accordingly, OptumInsight's motion for summary judgment of non-infringement is DENIED in

16  view of the factual dispute as to how a skilled artisan would interpret the plain and ordinary

17  meaning of the terms at issue.

18  **ii.  The Seare Patents**

19  CCGroup moves for summary judgment of non-infringement and argues that its Cave

20  Grouper does not infringe the asserted claims of the Seare Patents.[175]  The Court disagrees.

21

22

23  [170] See Dkt. No. 164-4 at 12-17.
[171] Id.

24  [172] See Apple, Inc. v. Samsung Electronics Co., Ltd., 2014 WL 660857, at *3 (N.D. Cal. 2014) ("Where, as here, parties did not seek construction of the terms at issue, courts give those terms their ordinary and customary meaning to a person of ordinary skill in the art in question at the time of the invention. ").

25  [173] Id.

26  [174] See id. ("The parties did not seek construction of this limitation, accordingly, it must be given its ordinary and customary meaning to a person ordinary skill in the art in question at the time of the invention … Because reasonable minds could differ both as to the meaning and presence of this final limitation, the court declines to grant either

27  parties' motion for summary judgment with respect to the [] patent.").
[175] Dkt. No. 147-4.

28

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

1    While claim construction is a matter of law, infringement itself is a question of fact.[176]

2    Therefore, a plaintiff is only entitled to summary judgment on the question of infringement "if the

3    facts and inferences, when viewed in the light most favorable to [non-moving party], would not

4    persuade a reasonable jury to return a verdict in favor of ...the non-moving party."[177]   As such,

5    OptumInsight can defeat the summary judgment motion by presenting evidence from which a

6    reasonable jury could resolve the issue in its favor.[178]

7    Claim 1 of the Seare Patents requires a step of "(c) reading at least one pre-defined

8    relationship between the at least one of a diagnosis code and a treatment code in the validated at

9    least one of a plurality of data records and pre-defined episode treatment categories."[179]   The

10   Court has construed that "Episode Treatment Category" shall mean "a classification that includes

11   one or more episode treatment groups" and that the plain meaning of the term "validate" shall

12   apply.[180]

13   CCGroup asserts that OptumInsight has failed to point to any evidence that the Cave

14   Grouper performs the "reading" function of this step.[181]   OptumInsight's expert, Dr. Rattray,

15   points to a pre-programmed table in the Cave Grouper to satisfy this step (c) limitation.[182]

16   However, CCGroup argues that the pre-programmed table in the Cave Grouper does not satisfy

17   the claim limitation because it "has nothing to do with reading a diagnosis or treatment code from

18   a claim data record ...."[183]   In response, OptumInsight argues that CCGroup's argument is

19   premised on an improper reading of the claim language.[184]   In step (c), "the claim requires reading

20   a relationship between [A] and [B], where A is the diagnosis code or the treatment code in the

21

---

22   [176] See Frank's Casing Crew and Rental Tools, Inc. v. Weatherford International, Inc., 389 F.3d 1370,1376 (Fed. Cir. 2004)

23   [177] Business Objects, S.A. v. Microstrategy, Inc., 398 F.3d 1366, 1371 (Fed. Cir. 2004); see also Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002).

24   [178] Armco, Inc. v. Cyclops Corp., 791 F.2d 147, 149 (Fed. Cir. 1986) ("[t]he party opposing the motion is required merely to point to an evidentiary conflict created on the record").

25   [179] See '079 Patent at 38:51-54; '252 Patent at 30:45-48.

26   [180] See Dkt. No. 92.
     [181] See Dkt. No. 147-4 at 31-32.

27   [182] See Rattray Report at ¶¶ 73-74; see also Rattray Dep. Tr., 121:12-129:11.
     [183] See Dkt. No. 189-4 at 21-22.

28   [184] See Dkt. No. 168 at 31-32.

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

1    validated data record and B is the pre-defined episode treatment categories.  The reference to 'in

2    the validated at least one of a plurality of data records' modifies the source of the diagnosis and

3    treatment codes and is clearly not specifying where the pre-modified relationship or the pre-

4    defined episode treatment categories are being read from."[185]

5              The Court looks to the intrinsic evidence because it is the primary source for determining

6    the meaning of a claim.[186]  The specification supports this plain reading of the claims language.

7    For example, the patent discloses "that CPT treatment codes and ICD-9 diagnosis codes are read

8    from the medical claims data.  The index code described in the '079 patent however, which is one

9    example of the 'predefined relationship,' is read from a look up table in the software."[187]  As such,

10   OptumInsight argues that "the predefined relationship between an index code and an ICD-9 code

11   is certainly 'read' – but it is read from a database that is part of the Cave Grouper medical

12   'knowledgebase' and not from the medical data records."[188]

13             Next, CCGroup disputes that the Cave Grouper performs step "(d) grouping the validated

14   at least one of a plurality of data records to an episode treatment category based upon the

15   predefined relationship, each episode treatment category having a dynamic time window defining

16   a time period which validated at least one of plurality of data records may be grouped to an

17   episode treatment category."[189]

18             Here, CCGroup argues that the Cave Grouper does not group claim data to an "episode

19   treatment category" or use "dynamic time windows" to determine which episode treatment

20   category a claim data record will be assigned.[190]  Rather, CCGroup argues that since the Cave

21   Grouper forms episodes of care and an episode of care is different from an episode treatment

22   category, the Cave Grouper does not use an episode treatment category.[191]  As construed by the

23   Court, an episode treatment category is a classification that includes one or more episode

24   _____

25   [185] Id.
     [186] Phillips v. AWH Corp., et al., 415 F.3d 1303, 1312-1324 (Fed. Cir. 2005).

26   [187] See '079 Patent at 24:11-15.
     [188] Dkt. No. 168 at 32.

27   [189] '079 Patent at 38:55-61; '252 Patent at 30:49-55.
     [190] See Dkt. No. 147-4 at 35-37.

28   [191] Id.

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

treatment groups.[192]   An episode of care is a "group of all healthcare services provided to a patient for the diagnosis, treatment, and aftercare of a specific medical condition(s) within a period of interest."[193]   Both parties agree that the Cave Grouper forms episodes of care and an episode treatment category is not the same as an episode of care.[194]   However, CCGroup argues that the Cave Grouper does not group data records to an episode treatment category which necessarily requires grouping claims data to a "group of medical conditions."[195]   OptumInsight contends that what CCGroup calls a "medical condition" in the Cave Grouper is properly viewed as an episode treatment group.[196]   Under the Court's construction, a single episode treatment group may constitute an episode treatment category.   Thus, the data records are grouped to an episode treatment category (the mechanism by which claims data records are grouped), as opposed to an episode of care, which is the final product resulting from the operation of the claimed process.[197]

CCGroup also argues that the Cave Grouper does not use a "dynamic time window" to group data records to an episode treatment category.[198]   OptumInsight argues that a "dynamic time window" is performed by the Cave Grouper when forming episodes of care for acute conditions, as confirmed by CCGroup's corporate representative, who testified that "[e]ach medical condition acute has a certain predefined duration of days window period" assigned by CCGroup.[199]   The Court has construed that "dynamic time window" shall mean "a time period that can reset based upon receipt of related claim records within a predefined time period."[200]   CCGroup distinguishes the Cave Grouper by reading the claim limitation as requiring "the use of dynamic time window to select or alter an episode treatment category."[201]

---

[192] See Dkt. No. 92.
[193] Dkt. No. 92 at 24.
[194] See Dkt. No. 169 at 34.
[195] Dkt. No. 189-4 at 21-22.
[196] Dkt. No. 169 at 33-36.
[197] Id.
[198] See Dkt. No. 189-4 at 24.
[199] See Dkt. No. 169 at 36-37; see also SB Ex. 29 at 50:7-12.
[200] Dkt. No. 92 at 22.
[201] Dkt. No. 147-4 at 35.

30

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Again, the Court looks to the intrinsic evidence because it is the primary source for

2  determining the meaning of a claim.[202]  The dynamic time window feature of the claim was

3  discussed in the file history of the '079 Patent.[203]  Specifically, in an amendment dated January 25,

4  2002, the applicant explained how the process of "grouping validated data records to episode

5  treatment category" and the dynamic time window" were implemented in the Seare Patents.[204]

6  OptumInsight argues that this explanation makes it clear that the episode treatment category has an

7  associated dynamic time window and that dynamic time window is used to group claims data

8  associated with the episode treatment category.[205]  This Court must walk the fine line of using the

9  specification to interpret the meaning of a claim without importing limitations from the

10  specification into the claim.[206]  However, the claim language, when properly construed, a genuine

11  issue of material fact existed as to whether accused Cave Grouper contained, literally, every

12  limitation of properly construed claims of the Seare Patents, precluding summary judgment of

13  noninfringement.

14    Accordingly, CCGroup's summary judgment for non-infringement is DENIED because the

15  Court finds that there is a material factual dispute as to whether CCGroup's Cave Grouper directly

16  infringes Claims 1 of the Seare Patents.

17  **IV.   CONCLUSION**

18  For the foregoing reasons, the Court GRANTS in part and DENIES in part OptumInsight's

19  summary judgment.  The Court DENIES CCGroup's summary judgment.

20    1.  Court DENIES OptumInsight's summary judgment as to the invalidity of the '126 Patent.

21    2.  Court DENIES OptumInsight's summary judgment as to the noninfringement of the '126

22      Patent.

23    3.  Court DENIES OptumInsight's summary judgment as to the validity of the Seare Patents

24      relating to the Cave Article.

25  _____

26  [202] Phillips, 415 F.3d 1312-1324.
    [203] See SB Ex. 28 at ING00001559-68 at 4-7

27  [204] See id.; see also Dkt. No. 169 at 37.
    [205] See Dkt. No. 169 at 37.

28  [206] Phillips, 415 F.3d 1323.

Case No.: 5:11-cv-00469-EJD
ORDER GRANTING IN PART AND DENYING IN PART OPTUMINSIGHT'S SUMMARY
JUDGMENT; DENYING CCGROUP'S SUMMARY JUDGMENT

4.  Court GRANTS OptumInsight's summary judgment as to the validity of the Seare Patents relating to the Aetna Proposal.

5.  Court DENIES CCGroup's summary judgment as to the noninfringement of the Seare Patents.

6.  Court DENIES CCGroup's summary judgment as to the invalidity of the Seare Patents.

**IT IS SO ORDERED.**

Dated: February 20, 2015



EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

32